ISAAC H. FISHBACK AND WIFE V. GEORGE S. YOUNG AND WIFE.

It is believed that the provision in the Constitution of the Republic, in favor of orphan children whose parents were entitled to land under the colonization law of Mexico, and who then resided in the Republic, included only orphans both of whose parents had departed this life. But if it be admitted, &c.

Where the father died in 1832, and the mother married another husband in 1835, and a headright certificate for a league and labor was issued by the Board of Land Commissioners, to the administrator of the deceased father in 1838, upon which a patent was issued to the heirs of the deceased father in 1848, it was held that the children were only entitled to one half the land, and that the mother was entitled to the other half, notwithstanding that the latter, as the wife of her second husband, might be entitled to her community interest in the headright of her second husband, who was a citizen at the Declaration of Independence.

The issuance of headright certificates to the administrators of persons who died before the Declaration of Independence, has always been recognized as valid by the Government, and it is too late now to question their validity.

Where the citation to a married woman in 1841, to answer a petition in the Probate Court, for partition, was returned served on her, it was held that there was no defect of jurisdiction.

An entry in the Probate Court in 1842, to the effect that the report of commissioners of partition was received and filed, is sufficient evidence of approval, where there is nothing to the contrary.

Error from Red River. Tried below before the Hon. William S. Todd.

This suit was commenced May 12th, 1855. Notice of the application for partition by Young and wife, in 1841, was served on Elizabeth Fishback, one of the plaintiffs, on Philip Cornelius, another of the heirs, and on a guardian *ad litem* who had been appointed by the Court for the other heir, who was a minor. It appeared from the patent, which was issued in 1848, to " the heirs of Daniel Cornelius," that the headright certificate had been issued by the Board of Land Commission-

ers of Red River county, on the 1st March, 1838, to George S. Young, administrator of the estate of Daniel Cornelius. A *certiorari* was prayed and obtained to reverse the action of the Probate Court.

The statement of facts was as follows:

The following facts were admitted: That Daniel Cornelius settled in Texas in 1831, with his family, which consisted of Elizabeth Fishback, Philip and Henry Cornelius, his children, and Mary Young, then his wife; that said Daniel died in 1832, and that his widow, the said Mary, was married to George S. Young in 1835, before the Declaration of Independence, and that patents had issued to the heirs of Daniel Cornelius, deceased, for the lands described in plaintiffs' petition, and that Mary Young and those who claim under her, have been in possession of the tract described in plaintiffs' petition, as containing 7 labors 474,468 square varas since the death of Daniel Cornelius to this time. Plaintiffs proved by J. C. Hart that the tract of 7 labors and 474,468 square varas in 1842, to be worth $2 per acre, and that the other tract described in plaintiffs' petition was worth one dollar per acre at that time, and also proved by E. West that, in 1842, that the tract of 7 labors and 474,468 square varas, was worth two or three times as much per acre as the other tract described in plaintiffs' petition. Plaintiffs also introduced the transcript from the County Court of Red River county, as evidence, and also the patents issued to the heirs of Daniel Cornelius, which transcript and patents are made a part of this statement of facts.

On cross-examination, both Hart and West said they did not know that they had ever seen the larger tract of land, but gave their judgment upon the land situated in the neighborhood of where they understood this tract to be.

Defendants introduced A. H. Latimer, who testified that he made the survey of the larger tract of land in 1838; that there was a great rush in 1838 to obtain land in the neighborhood of the larger tract, and that the land there was much

Fishback v. Young.

sought after by some, on account of the peculiarities of the soil ; that the land included in the Saller survey is inferior to the generality of the land in its neighborhood, and has ever been so considered ; that, in 1842, the Saller tract might have been sold, perhaps, for a dollar an acre, and the large tract, for fifty cents per acre ; that he was well acquainted with the commissioners appointed by the County Court to divide the land ; that they were men of undoubted judgment and integrity. The same character of the commissioners was proven by George Bagby and D. K. Jamison.

After charging the jury as to the right of Mrs. Young to one-half of the land, the charge continued as follows :

In regard to the second branch of the subject, to-wit : the partition of the land, there has been, doubtless, some irregularities in the proceedings of the Probate Court ; but in what have not these irregularities occurred in the proceedings of the Probate Courts, and especially in those early times ? This Court, however, is of opinion that the Probate Court of Red River county had jurisdiction of the subject, and that the proceedings have been such as to forbid this Court to disturb them at this late period, unless some fraud had been practiced, of which there is no allegation, or unless there had been a gross inequality in the partition, and signal injustice done to the party complaining. I, therefore, submit it to the jury to determine, from the evidence, whether or not such inequality does exist, or whether such injustice has been done ; and if so, you will say so by your verdict. But if you believe, from the evidence, that the division was at the time a fair and equitable one, you will find a verdict for the defendants. If the jury believe, from the evidence, that the division of the land at the time it was made, was so unequal as to effect the rights of the plaintiffs injuriously, they may find a verdict in favor of setting aside the division made in the Probate Court, if not, they will find for defendants.

Verdict and judgment for defendants. Motion for new trial overruled, &c.

*S. H. Morgan*, for appellants.

*Morrill & Dickson*, and *J. A. T. Murray*, for appellees.

HEMPHILL, CH. J.   Daniel Cornelius settled in Texas in 1831, with his family, consisting of three children; one of them, viz: Elizabeth—either then or subsequently intermarried with Isaac H. Fishback—and his wife Mary, now Mary Young. Daniel Cornelius died in 1832. His widow, said Mary, was married to George S. Young in 1835.   On the opening of the Land Office, a certificate for a league and labor was issued to George S. Young, as head of a family, and a certificate for like quantity was issued to the heirs of Daniel Cornelius deceased. The latter certificate was located in two tracts, one containing something more than seven labors, and the other something less than nineteen labors.   In May, 1841, George S. Young and Mary, his wife, petitioned for a division of the land granted to the heirs of Daniel Cornelius, deceased.   Proceedings were had on the petition.   Mary Young, who had been the wife of the deceased Cornelius, was adjudged entitled to the one-half of the land.   Commissioners of partition were appointed.   Their first report was not received.   Their second was received and ordered to be filed.   The smaller tract was assigned to the widow of the deceased, and also three labors, 882,528 varas of the larger tract; the remainder of the larger tract of 18 labors, 529,932 varas, was distributed between the heirs of the deceased.

This suit, by Isaac H. Fishback and his wife Elizabeth, is to annul that partition, on the grounds as well of inequality as that Mary Young, the former wife of the deceased Cornelius, was not entitled to any portion of the land granted in terms to his heirs.

To support the claim of the heirs of Daniel Cornelius to the exclusive right in the land, it is contended that their right is based on that clause of the tenth section of the General Provisions of the Constitution of the Republic, which reads, that "orphan children whose parents were entitled to land under

the colonization laws of Mexico, and who now reside in the Republic, shall be entitled to all the rights of which their parents were possessed at the time of their death." (Hart. Dig. p. 38.) It is believed that this provision includes only orphans both of whose parents had departed this life.

But if it be admitted that the scope of the clause in the Constitution would embrace children, but one of whose parents was dead, yet it would not follow that such children would be entitled to the whole of the land in the grant. They would have all the rights of the deceased parent. But what are his rights? Certainly not the exclusive and entire estate. For instance, in this case ; the land, if granted at the time of the death of Cornelius, (and the grantees, as his heirs, can claim only the estate as it existed at his death,) would have been community property, one moiety of which would have continued the property of the surviving wife, and the other would have accrued to the heirs. They have no personal or individual right to the grant. They can claim only as representatives of the deceased. They represent not only the separate estate of the deceased, but also his community property ; and until the latter is divided, they may be considered, and in grants of this character always have been considered, as representing the whole of the community estate. It would be unreasonable to suppose that the Government would issue a separate certificate to each of the distributees or part owners of an undivided estate. The grants under cases which present like facts with the present, were, it is believed, issued in many cases, to an administrator of the deceased ; in other cases, as in the one before us, to his heirs—and, perhaps, in other modes. But let the grant be issued as it may, the nominal grantee or grantees, take for the benefit and in trust for all interested in the whole *corpus* of the estate, whether the claim be through heirship, or as joint owner by the right of community. Had Mary Young remained a widow, she would have been entitled in her separate right, as head of the family at the Declaration

of Independence, to the whole of the certificate. But she might have renounced that right; she might have permitted the grant to issue to an administrator or the heirs of the deceased, or she might have taken it in her own name, but really as the widow of the deceased, and as intending to be the representative of his estate, and not as claiming in her separate right, as head of a family. But where the certificate would issue in her name, it would require the most conclusive evidence to show that she intended to represent the deceased, and not herself in her own right. (Edwards v. Beavers, *supra*.) But as previously said, let the grant be issued as it will, if the issue be to persons representing, in form or in fact, the deceased, it must inure to the benefit of all interested in the estate. It is not questioned but that the Board of Commissioners had lawful authority to issue a grant for the benefit of this estate. Such question cannot be regarded as an open one. Grants of this character have always been recognized by the Government, and it is too late to now question their validity.

The positson that the defendant Mary was not entitled to a proportion of the grant, is not sound, and the partition cannot be quøstioned on the ground merely that a community share was allotted to her in the division.

Nor is there evidence of such great inequality as would authorise a Court, especially after the lapse of so many years, to disturb the partition. The jurisdiction of the Probate Court has been disputed, but this cannot be maintained. The Court had jurisdiction under Sec. 37, (Hart. Dig. Art. 1031,) of the law of 1840; and the proceedings are not nullities on the supposed ground of the want of authority. There was no fraud alleged, none was proved, and the question of inequality was fully and fairly submitted by the Court to the jury. The Court charged that there must be gross inequality, and signal injustice, to authorise the partition to be disturbed at this late day; and again reiterated the charge, to the effect that the partition might be disturbed if so unequal as to affect injuri-

ously the rights of the plaintiffs. It was in proof that the commissioners of partition were men of undoubted judgment and integrity. Commissioners are selected for their skill and fidelity. They act under oath ; and their act is *prima facie* to be regarded a fair division, and when objected to at the time can be set aside only on the ground of fraud, partiality, or palpable error in the judgment of the commissioners.

It is not deemed necessary to scrutinize minutely the evidence. The jury found for the defendants, and there was no proof of such material injustice or inequality as to require the verdict to be set aside. The Report of the Commissioners was filed and received on the 31st January, 1842, but was not formally approved and confirmed. The County Court in Nov. 1853, supposing that some further action was necessary, considered the Report and fully approved and confirmed the act of the commissioners. But it is believed that this last proceeding was not necessary to give validity or efficacy to the partition. The fact of filing and receiving was considered equivalent to approval. The entry of approval, or of homologation as it was formerly termed, is believed to be frequently in terms of the following import, viz : " filed and admitted to Record." In this case the first report was not received, the second was received, and that, no doubt, was regarded as in substance, an adoption. There was a mistake in the original Report, in assigning the portion intended for Mrs. Elizabeth Fishback to her husband, Isaac H. Fishback. Of course he would hold in trust for his wife, but the land should have been allotted to her in her own name.

It is ordered that the judgment of the District Court be affirmed ; and it is further ordered that the proceedings of the Probate Court, in relation to the division of the lands granted to the heirs of Daniel Cornelius, deceased, be affirmed generally, and be reformed only in the following particulars, viz : It is ordered, adjudged and decreed, that the portion of the land which, in the Report of the Commissioners of Parti-

tion, was assigned to Isaac H. Fishback, be, and the same is, hereby assigned and set apart to Elizabeth Fishback, his wife, and that all the right, title and interest, of the heirs of Daniel Cornelius, deceased, and of the said Mary Young, be divested out of the said portion or share of the land, and vested in the said Elizabeth Fishback, her heirs and assigns, forever.

Judgment reformed.