## J. P. SMITH ET AL. V. W. M. WALTON ET AL.

### No. 6529.

**Marriage of Slave—Case in Judgment.**—Peter Allen, a colored man, in 1835 emigrated from Pennsylvania to Alabama, where he was married to a slave woman. He enlisted in a volunteer company which came to Texas. He fell with Fannin at Goliad. His father, a brother, and two sisters, residing in Pennsylvania, through attorneys obtained the bounty and headright lands to which the deceased was entitled, and they, as heirs of an unmarried man. Subsequently Mary Allen, the widow, applied to the proper department of the government and obtained a certificate for two-

thirds of a league and a labor of land upon establishing the fact of her marriage with Peter Allen. She caused the certificate to be located and obtained patent. Pending her application for the certificate a protest was filed by the attorney of the Pennsylvania heirs. The certificate was issued under the Act of February 9, 1850, for relief of the heirs of those who fell with Fannin, Ward, and Travis. Their vendees brought suit against vendees of Mary Allen for the land in controversy. *Held:*

1. The discretion and power under the law to determine the qualification of beneficiaries were lodged in the Adjutant-General, whose decision is conclusive of the facts necessary to sustain the grant of the certificate. Styles v. Gray, 10 Texas, 505; Johnson v. Smith, 21 Texas, 722.

2. The act of the Adjutant-General in issuing, etc., was conclusive that Peter Allen was a head of a family.

3. The vendees of the father, brother, and sisters of Peter Allen can not claim title to the land sued for on the ground that Peter was a single man, because they have received all that he was entitled to receive (about 4000 acres) as a single man. They can not claim title upon the theory that he was a married man or head of a family, because these are facts which they deny. They controvert the facts upon which the grant is based.

4. The legal effect of the title of the defendants holding under the widow is not passed upon..

5. The plaintiffs showed no title to the land and can not recover.

APPEAL from Travis. Tried below before Hon. A. S. WALKER. The opinion states the case.

*Brown & Gunter* and *D. C. Freeman*, for appellants.—1. The agreed statement of facts shows that Mary Allen, under whom the defendants claim, was a slave when the pretended marriage between her and Peter Allen took place, and continued to be so until she was emancipated in 1865, in the State of Alabama, with other slaves. She could not be the wife of Peter Allen under the law, and had no rights in the premises. Timmins v. Lacey, 30 Texas, 115; Melinda and Sarah v. Gardner, 24 Ala., 719; Catoulou v. Hooa, 56 Ala., 519; Estell v. Rogers, 1 Bush (Ky.), 62; Hall v. United States, 2 Otto, 27.

2. The grant of the certificate to the heirs of Peter Allen referred to those who could inherit under the law at the date of his death, and the persons under whom the plaintiffs claim were the only persons who could inherit at that time, which shows title to the plaintiffs by their conveyance from the heirs. Warnell v. Finch, 15 Texas, 166; Lee v. Smith, 18 Texas, 141; Yates v. Iams, 10 Texas, 168; Hornsby v. Bacon, 20 Texas, 556; Goodrich v. O'Connor, 52 Texas, 375.

3. Although the laws of Texas after the organization of the government under the Constitution of the Republic prohibited free persons of color from residing in Texas, it did not prohibit them from holding lands, and by comity, at least, such persons residing in other States might hold lands here. Shaw v. Brown, 35 Miss., 246; U. S. Dig., 1st series, vol. 9, p. 508, sec. 28.

*Rector, Thomson & Rector,* and *Maxey & Fisher,* for appellees.—1. The father, brother, and sisters of Peter Allen received in their own right, as heirs of Peter, a headright for 1476 acres, a bounty for 1920 acres, and a donation for 640 acres, all the land to which they, as heirs of a single man, were entitled under the laws of the State. Mary Allen, the wife of Peter, got no part of those certificates and derived no benefit therefrom. Subsequent to the issuance of the certificates mentioned, Mary, as wife of Peter, applied to the proper department of government for the issuance of a certificate for two-thirds of a league and labor, and upon proof made by her of her marriage with Peter the certificate issued; and Mary at her own expense had the certificate located on the land in controversy, the survey was made by her, and the patent issued upon her application. The father, brother, and sisters of Peter having, therefore, received all the lands, which they might properly and legally claim, can have no right, title, or interest in the land in suit, and their vendees, the plaintiffs, who purchased with knowledge of all the facts, are not entitled to recover. Act 1850, Pasch. Dig., arts. 4158, 4161; De Court v. Sproul, 66 Texas, 372; Burkett & Murphy v. Scarborough, 59 Texas, 498; Babb v. Carroll, 21 Texas, 768; Wheat v. Owens, 15 Texas, 242.

2. Mary Allen did not take the land as heir of her husband, but in her own right as his wife, and the certificate having been issued to her by virtue of her relation as wife of Peter Allen, no one but the government can complain. Babb v. Carroll, 21 Texas, 768; Clark v. Allen, 21 Texas, 405; Allen v. Clark, 18 Texas, 104; Soye v. McCallister, 18 Texas, 80; Goldsmith v. Herndon, 33 Texas, 707; Johnson v. Smith, 21 Texas, 728; De Court v. Sproul, 66 Texas, 368; Pasch. Dig., art. 4159.

3. Free negroes were not embraced within the Act of February 9, 1850, and the certificate and patent issued thereon were nullities, conferring no rights upon the father, brother, and sisters of Peter Allen; and it being admitted that plaintiffs have only the title claimed by such father, etc., they can not recover. Hart. Dig., arts. 1881–1887, 1895; Const. of the Republic, secs. 9 and 10 of the General Provisions; Hart. Dig., arts. 2539, 4543, 2546–2556, 2576–2586; 37 Texas, 706–709; 6 Wall., 122.

*Rector, Thomson & Rector,* and *W. P. Ballinger,* each filed an argument for appellees.

HOBBY, PRESIDING JUDGE, *Section A.*—This is an action of trespass to try title to two-thirds of a league and one labor of land situated in Haskell County. The venue was changed to Travis County, and at the December term, 1887, the case was tried by the court without a jury and judgment rendered for defendants.

The agreed statement of facts shows that Peter Allen, a free man of color, removed from the State of Pennsylvania to the State of Alabama, and in the year 1835 enlisted in a volunteer company which became a part of the army of the Republic of Texas, and that he fell with Fannin at Goliad in 1836. He left surviving him no child or children, but his father (Richard Allen), a brother (John Allen), and two sisters (Sarah Wilkins and Mary Adams).

The appellants, who were plaintiffs below, own their title as heirs of Peter Allen to the two-thirds of a league and labor of land in controversy located by virtue of a certificate issued to the heirs of said Peter Allen. The appellants admit that Mary Allen was the wife of Peter Allen, as far as this relation could be created (she being a slave in 1834 or 1835) by the performance of the marriage ceremony under a regular license by a minister, and followed and consummated by cohabitation. This relation existed at the time of the massacre of Allen, with Fannin.

There was issued to the heirs of said Peter Allen a headright for 1476 acres, dated May 21, 1851; a bounty for 1920 acres, and a donation for 640 acres as one of the Fannin men, all of which plaintiffs' vendees received, Mary Allen receiving no part thereof. These certificates were issued upon the theory that Allen was an unmarried man. Subsequently Mary Allen applied to the proper department of the government and obtained the certificate for two-thirds of a league and labor, alleging and establishing the facts of her marriage, as above explained, with Peter Allen, by virtue of which facts the certificate was issued on which the land in litigation was patented. The patent was obtained by Mary Allen through her attorney under contract.

The appellees, defendants below, own all of her title. She is still living, and was a slave from 1834 until her emancipation in 1865 by the government. The plaintiffs' vendors were born free negroes and have always resided in the State of Pennsylvania.

Under the foregoing facts the court below held, "as a matter of law, that plaintiffs do not show title to the land." Judgment being entered in accordance with such conclusion, they appealed.

The first assignment of error is, that "the evidence shows that the certificate by virtue of which the land was located and the patent issued by the State both issued to the heirs of Peter Allen; that the parties under whom the plaintiffs claim were the heirs of Peter Allen, and that the plaintiffs had all their title in the land sued for, which constituted title in plaintiffs."

Appellants' contention is that as Mary Allen was a slave in 1834-5, there could have been no lawful marriage relation existing between her and Peter Allen in Alabama, and that the "grant of the certificate to the heirs of Peter Allen referred to such persons as at the date of his death could inherit," and that as they (the plaintiffs' vendors) were those persons, the title vested in them.

The land in controversy is two-thirds of a league and labor, claimed by appellants to have been located and patented under the act of February 9, 1850 (Pasch. Dig., 4158–4161), by virtue of a certificate issued thereunder. This act was for the relief of the heirs of those who fell with Fannin, Ward, Travis, etc.

The first and second sections of this law authorized and directed the Adjutant-General to ascertain from his records, etc., the names of those who fell with Fannin, Ward, Johnson, and Grant, and at the Alamo, during the war in 1836, and to issue to their heirs, etc., certificates for headrights of a league and labor in cases of heads of families, and one-third of a league where the deceased were single men. The fourth section of the act extended its terms only to those in whose right "no certificate for headright had been previously issued."

It is admitted that Mary Allen applied to the proper department of the government for the certificate, and alleged and proved the facts necessary to procure, and which did obtain, its issuance, on November 25, 1852, by J. S. Gillett, the Adjutant-General. The facts that she was the surviving wife of Peter Allen, who fell with Fannin, on March 27, 1836, and had previously received no headright certificate in her right as such wife, constituted the essential predicate on which alone the certificate could issue.

The discretion and power under the law to determine the qualifications of those who applied for certificates under that act were lodged in the officer named therein, the Adjutant-General.

It has been repeatedly decided in this State that the decision of the officer, commissioner, or tribunal authorized to issue titles was conclusive of the facts necessary to sustain the grant. In Styles v. Gray, 60 Texas, 505, 506, where the defendant proposed to prove that "Ann Gray, the grantee under the State, and under whom plaintiff claimed as heir, was never a married woman, widow, or head of a family," the court held that the naked fact that she "never had the qualification entitling her to the grant, unconnected with fraud," was not a defense against her and did not affect her title. Conceding in that case that she was without the essential qualifications on which alone the grant could issue, it was said in effect, that the commissioners whose duty it was to pass upon that fact had decided otherwise, and it could not be disputed now. Upon the same principle it was decided in Johnson v. Smith, 21 Texas, 729, that the fact whether the grantee, who had obtained a grant, was the head of a family, could not be controverted or his title impeached by showing otherwise. This line of cases extends unbroken from the first to the latest of our Reports, and is too familiar to the profession to require further citation.

The evidence in the case before us shows that the facts were established before the proper officer by Mary Allen which authorized him to issue the certificate upon the theory that Peter Allen was a married

man or the head of a family. These are the facts which gave existence and life to the certificate. The grounds on which its issuance was authorized, the facts on which it was predicated, are not now to be inquired into or disputed for the purpose of impeaching the title or in any manner affecting the grant to the land. The facts before the officer were sufficient to satisfy him that Peter Allen was the head of a family, and his decision upon this question is conclusive for the purpose of upholding the title issued on that ground.

But we do not mean to hold that it is conclusive upon the question of who or what members composed the family. Nor do we intend to hold that his decision of the question that Peter Allen was a married man would be conclusive as to the fact that Mary Allen was his wife. It is not recited in the certificate that she was his wife.

The plaintiffs' vendors can not claim title to the land on the ground that Peter Allen was a single man, because they have received all that he was entitled to (4000 acres) as such single man. They can not claim title in this suit upon the theory that he was a married man or the head of a family, because these are facts the existence of which they deny. They can not claim title under a grant which is issued upon and has its foundation in a state of facts which they controvert. The certificate necessarily issued, under the act of 1850, to "the heirs" of the deceased. Such was the language of the law. Although so issued, that recital would be controlled by the law, which fixed the rights of the parties. These rights are not impaired by the fact that the certificate issued to the heirs, the widow, or the administrator. Babb v. Carrol, 21 Texas, 768.

The case is not one, we think, in which we are called upon to determine the character or sufficiency of the appellees' title. The grounds on which the appellants seek to recover are not of that character which give them title, or authorize a recovery on the strength of their own title. If no certificate could issue to Mary Allen, for the reasons assigned by appellants, it adds nothing to their title. They can not claim it because he was a single man, for they had received all that he was as such entitled to. They deny that the certificate was properly issued to him as the head of a family. If this be so, there is nothing which would authorize them to recover.

We think the judgment should be affirmed.

*Affirmed.*