## J. F. DICK v. S. C. MALONE ET AL.

Decided June 30, 1900.

**1. Land Certificate to Heirs—Recitation of Ancestor's Death in the Alamo.**

Where a bounty land certificate issued by the Secretary of War in 1838 recited that the heirs of W. T. M., who served in the army of the Republic and had fallen in the Alamo, were entitled to the amount of land named therein, this was conclusive of the fact that W. T. M. had so fallen, although the official muster rolls of those who fell at the Alamo did not show such name; and the heirs of a W. T. M. who served in the army of the Republic about that time, and who seems to have been the only person of that name who did so serve, but who survived for many years thereafter, were not entitled to the land located by virtue of such certificate.

**2. Same—Grant of Land to Heirs of a Living Person a Nullity.**

A land certificate and patent thereon issued to the heirs of a person still living is a nullity, and conveys no title to those who are heirs of such person at his death thereafter. CONNER, Chief Justice, dissenting.

APPEAL from Parker. Tried below before Hon. J. W. PATTERSON.

*A. H. Culwell,* for appellant.

*Kimbell Bros. & Blackman,* for appellees.

HUNTER, Associate Justice.—This was an action of trespass to try title brought in the District Court of Parker County by the appellees against the appellant on the 9th day of March, 1898, to recover 1920 acres of land, situated partly in said county and partly in Palo Pinto County. The defense was "not guilty" and limitation of five and ten years. On the trial, however, the defendant abandoned his pleas of limitation. The case was tried by a jury, and verdict and judgment went in favor of the plaintiffs, and the defendant has appealed.

On the trial the plaintiffs proved by undisputed evidence that their father, William T. Malone, served as a soldier in 1835 and 1836 in Captain Parrott's artillery company, and the muster rolls show that he was in camp at the siege of Bexar, November 23, 1835, with his company. He was not killed in the battle of the Alamo, but died in Lee County, Mississippi, in 1880. There was no evidence that any one by the name of William T. Malone fell at the Alamo, other than was contained in the bounty warrant issued by George W. Hockley, Secretary of War, as given below. In fact, the record index of the muster roll of those who fell at the Alamo, kept in the General Land Office, fails to give such name, and one witness who was acquainted with the ancestor of plaintiffs testified that he knew him and served with him as a soldier in said war, and that he never knew or heard of any other man of that name who served as a soldier in the war between Texas and Mexico. The land in controversy was located and patented by virtue of bounty warrant No. 4005, issued by George W. Hockley, Secretary of War of the Republic of Texas, on July 5, 1838, which is as follows: "Republic of Texas. Know all men to whom these presents shall come that Wm. T. Malone, having served faithfully and honorably for the term of five months from the twenty-sixth day of September, 1835, to the sixth day of March, 1836, and having fallen in the Alamo, is entitled to nineteen hundred and twenty acres bounty land, for which this is his certificate; and said Wm. T. Malone or legal heirs is entitled to hold said land, or to sell, alienate, convey, and donate the same, and to exercise all rights of ownership over it. In testimony whereof I have hereunto set my hand, at Houston, this fifth day July, 1838. Geo. W. Hockley, Secretary of War." The patent was issued on the 20th day of August, 1872, to the "heirs of William T. Malone, deceased." The defendant, appellant here, proved that he was in possession of the land in controversy, and had been for about five years, claiming to own the same, and had a general warranty deed to 480 acres of it from W. H. Fain, dated in 1893. Fain had a general warranty deed to said 480 acres from J. E. B. Stewart, date not given in the record, and Stewart held the same under a general warranty deed from J. M. Abbott, dated April 28, 1885.

The sole issue, in effect, submitted to the jury was whether appellees were the heirs of the William T. Malone, on account of whose military services and recited death in the Alamo the certificate and patent were issued; the court instructing them, if they so found, to find for appellees, and, if not, to return a verdict for appellant.

One of appellant's assignments of error complains that "the verdict and judgment is not supported by the evidence, in this: That the evidence shows that this land was patented, in 1872, to the heirs of William T. Malone, deceased; and the evidence also shows that the William T. Malone under whom these plaintiffs claim did not die until 1880; while the evidence further shows that the William T. Malone who was entitled to this land fell at the Alamo in 1836; it also showing that plaintiffs' ancestor did not take part in the battle of the Alamo." This assignment the court sustains, because the evidence is undisputed that the father of appellees, in whose right as heirs they claim title to this land, did not fall at the Alamo, but died in the State of Mississippi in 1880. The certificate or bounty warrant issued in this case establishes on its face that a William T. Malone fell at the Alamo on March 6, 1836 (Smith v. Walton, 82 Texas, 547), and for that reason, in part, the bounty of the Republic of Texas was extended to his heirs. These facts should be accepted as fully proven in this case. It matters not, then, that his name is not found among the list of those who fell in that cruel massacre, nor that one witness who served in that war never knew or heard of any other person by that name who served in that war except plaintiffs' ancestor. It was for the Secretary of War to determine the facts upon which the right to this bounty warrant depended, and, having issued the warrant, it is conclusive in this case that it was issued to the heirs of the William T. Malone who served in the Texas army from September 26, 1835, until March 6, 1836, and fell in that memorable battle, and not to the father of appellees, who was alive at that time, and continued in the flesh until 1880. See Graham v. Billings (Texas Civ. App.), 51 S. W. Rep., 645. Otherwise the grant itself would seem to be a nullity, because a grant made in terms to the heirs of a living man fails for want of a grantee. There are three things necessary to every valid grant,—a grantor, a grantee, and a certain thing granted. In this instance it is clear that, if the grant should be construed as a bounty to the heirs of appellees' father, it must fail for uncertainty; for no one could know who would be such, or how many he might have when he should die, and he could have no heirs until he died. So the grant is made to a class of persons not in existence. A grant to a dead man or a grantee not in existence was always void, both according to the common and the civil law. It is not so in Texas as to a dead man, because our statute provides that a grant to one who is dead shall invest title in his heirs or assigns, and this provision relates only to patents issued by the State. Gould v. West, 32 Texas, 339. A grant to one's children might be good, because it would take effect upon delivery, there being persons designated by these terms who could then take; but, in case of a grant to the heirs of a living person there is no one in whom the title can vest at the time of its execution and delivery, and, unless it vests, then it can never take effect. We are therefore of opinion that the undisputed evidence in this case affirmatively shows that the plaintiffs, appellees here, have no title to

the land in controversy, nor to any part thereof, and that it was the duty of the District Court to so instruct the jury, and we therefore order that the judgment in this case be reversed, and we here now render same in favor of the appellant.

*Reversed and rendered.*

CONNER, CHIEF JUSTICE (Dissenting).—I have been unable to agree to the conclusion reached by the majority, and deem it my duty to at least briefly express my view. Conclusive effect is given by the majority to the recitation in the certificate, set out in their opinion, that W. T. Malone fell at the Alamo. In this I most respectfully dissent. The petition was in the ordinary form of trespass to try title, with a plea of not guilty. The court submitted the issue to the jury in the following language: "If you find and believe from a preponderance of the evidence in this cause that the plaintiffs are heirs of William T. Malone, and that said William T. Malone, the father of plaintiffs, was the same William T. Malone to whom the certificate by virtue of which the land in controversy was patented was granted, you will find for the plaintiffs, and so say by your verdict. If you do not believe from a preponderance of the evidence that the father of the plaintiffs was the William T. Malone to whom the certificate by virtue of which the land in controversy was patented was granted, you will find for the defendant. Or, if you believe and find from the evidence in this cause that the William T. Malone for whose services the certificate by which the land was patented was granted, was killed in the battle of the Alamo, you will find for the defendant, and so say by your verdict." The uncontroverted evidence proved that the ancestor of appellees served as a soldier in the war between Texas and Mexico, and, exclusive of said recitation, tended to show that no other W. T. Malone so served in said war, and that no person of that name was in fact killed at the Alamo, as was shown by the absence of any such name from the lists of those who fell at the Alamo, required by the early laws to be filed with the Commissioner of the General Land Office, and by the testimony of a fellow comrade and soldier that he never knew or heard of any other W. T. Malone who served in said war, coupled with the inference to be drawn from the failure of appellant during the nineteen months pendency of the suit to offer evidence tending to show otherwise. In this state of the pleading, evidence, and charge of the court, the jury returned their verdict for appellees, and the trial court has refused to disturb such verdict and the judgment entered thereon. Wherefore, in my opinion, conclusive effect to the contrary should not be given to a mere recital in the certificate. The recital was, at most, it seems to me, but evidence conflicting with the evidence of contrary import, as was in effect treated by this court in the somewhat similar case of Graham v. Billings, 51 Southwestern Reporter, 645, cited by the majority. This conflict having been settled by the verdict of the jury in appellees' favor, reduces

the proposition to the simple question whether the heirs of one in whose right a certificate of the character mentioned has been shown to have issued shall be defeated because of a false recital in the certificate. Section 6 of the Act of the Congress of the Republic of Texas approved December 21, 1837 (see 1 Gammel's Laws Texas, bottom page 1450), provides for the issuance of certificates of 640 acres of land to those who fell at the Alamo, and section 3 of the same act directs that bounty warrants issued under the act shall state on their face on what account the warrant issued. But I have been unable to find where the Secretary of War was specifically authorized to issue warrants for 1920 acres. This may have been the form adopted of uniting in one certificate lands to which the person to whom issued was entitled under colonization, augmentation, or other laws, but, however this was, such certificates have been upheld, and in actions as herein must be sustained as valid bounty warrants issued as of right in the individual, and not as a mere donation of gratuity to his heirs. See Rogers v. Kennard, 54 Texas, 30; Todd v. Masterson, 61 Texas, 618; Smith v. Walton, 82 Texas, 547. The right of the grantee, William T. Malone, to and in this certificate, is not made dependent, by any law or regulation I can find, upon the fact that he "fell at the Alamo," or was dead at the time of its issuance. I therefore think that the court's charge was correct, and, as I have indicated, that it should be held that the recital in the patent of his death, and in the certificate that he had "fallen in the Alamo," are mere descriptive recitals, relating to the identity of the person to whom the grant was made, and that it may be shown, notwithstanding such recitals, that the person in whose right the certificate issued in fact did not fall at the Alamo, and was not dead at the date of the issuance of the patent. This appellees sought to do, and did do to the satisfaction of the jury, and, as stated, I think the evidence sustains the verdict.

I am not unmindful of the ancient maxim that "nemo est hæris viventis," and that to be effective there must be a grantee in esse for every grant; but I think improper effect has been given thereto. It may be conceded that the patent, being to the heirs of one living, is a nullity, and conferred no title, and even that the certificate is to be so construed; yet it does not follow that appellees, as against one showing no title, should not recover. By our statute it is expressly provided that "all certificates for headright, land scrip, bounty warrant, or any other evidence of right to land recognized by the laws of this State which have been located and surveyed, shall be deemed and held as a sufficient title to authorize the maintenance of the action of trespass to try title." Rev. Stats., art. 5259.

The certificate in question also recites the undisputed fact that W. T. Malone "faithfully and honorably" served as a soldier as stated, and it will not be disputed that the early laws of the Republic of Texas in express terms promised lands in the way of compensation to those who should so serve, and therefore, as has been expressly held in the cases cited, certificates issued to them in right of such services. The right

so shown continued in appellees' ancestor until his death, at which time it descended to appellees, and is such right, under the other facts in this case, as authorized appellees to maintain this suit. The certificate did not constitute the right. Harvey v. Cummings, 68 Texas, 599, and authorities cited on pages 605 and 606. It was mere evidence thereof, conferring authority to have located and surveyed the land to which the one named was entitled by virtue of the law and of his service as a soldier. The certificate here has been located and surveyed, which location and survey has been recognized by the State of Texas in the issuance of patent, void as title though it may be, and the right so shown comes fairly within the article of the statute quoted.

The case of Smith v. Walton, cited by the majority, is authority for the proposition that the recitals of the certificate can not be disputed for the purpose of impeaching the title. It, nor any of the cases therein cited, does not hold that the truth will not be heard in aid of a right or grant. It seems to me that the effect of the majority opinion is to permit precisely what is denied in those cases, viz., to defeat appellees' right or title by showing, or availing themselves of the proof, that the recitation of W. T. Malone's fall at the Alamo is false. In the light of the evidence, verdict, and judgment, the recitation in the certificate was an evident mistake, and should be so treated. The certificate should of right, in so far as the issue is involved in the present controversy, have issued to appellees' ancestor. Equity regards as done what ought to have been done, and never permits a trust to fail for want of a trustee, and in my judgment, under the circumstances, the certificate should be construed, if necessary in aid of the title, as having issued to W. T. Malone, and not to his heirs. Indeed, the certificate on its face may fairly be construed as in fact issued to him. It clearly manifests the right of W. T. Malone, and the intent of the Secretary of War to issue the certificate to him, if living, or to his heirs, if dead. The form of these recitals may be accepted as an indication of some want of certainty in the recited fact of his fall, and hence the latter recital, and the terms "or his heirs," might well be disregarded as having been entered by mistake, and the certificate, by whomsoever procured, and the land located by virtue thereof, in whomsoever hands found, declared to be held in trust for the true owners. Possibly it should be held that the recited fact was a condition precedent to the right of 640 acres of the certificate, and that, therefore, to that extent appellees failed to show right of recovery, although the Act of 1837, cited, also gave right to 640 acres to those participating in the battle of San Jacinto, and to those who took part in the reduction of Bexar between the 5th and 10th of December, 1835, and there was evidence in the record tending, at least inferentially, to show that appellees' ancestor was an actor in both of these events. But, however this may be, it seems to me that appellees' title in this action, and as against appellant, should be held unassailable to at least the greater part of the land in controversy. I do not believe that the children of those who served "faithfully and

honorably" in that great struggle that evoked the applause of the world, and won for Texas imperial domain, should be deprived of any part of the fruits of the ultimate victory on a mere technical rule of antiquity. I think the judgment should be affirmed.

Writ of error granted by the Supreme Court, and judgment of the Court of Civil Appeals affirmed. See 94 Texas, —.