## S. C. MALONE ET AL. v. J. F. DICK.

No. 989. Decided March 4, 1901.

**1. Grant of Land—Inheritance—Identity of Ancestor and Grantee.**

Where land was patented to the heirs of W. T. M. by virtue of a bounty warrant which recited that he had "fallen in the Alamo," such recital created a strong prima facie case, if not conclusive, that the one for whose service it was granted died as so recited, and persons claiming as heirs of one W. T. M., who served in the army of the Republic, but did not die at the Alamo, nor until 1880, could not recover the land except upon proof that their ancestor was the person in whose right the warrant actually issued. (Pp. 422, 423.)

**2. Same.**

See evidence held insufficient to establish the identity of plaintiffs' ancestor with the grantee, of the same name, in whose right land was granted. (P. 423.)

**3. Evidence—Muster Rolls—Destruction of Archives.**

The original rolls of those who fell at the Alamo having been destroyed in 1855 (which is judicially recognized as matter of history), the absence of a name from those subsequently made up and deposited in the Land Office does not disprove the recital made in a bounty warrant, issued in 1838 by the Secretary of War, who had the original rolls, that the grantee, bearing that name, fell at the Alamo. (Pp. 423, 424.)

ERROR to the Court of Civil Appeals for the Second District, in an appeal from Parker County.

Malone and others sued Dick in trespass to try title and recovered judgment, from which defendants appealed. The Court of Civil Appeals reversed and rendered judgment for appellant, and appellees obtained a writ of error.

*Kimbell Bros. & Blackmore,* for plaintiffs in error.—Where the land certificate and patent issues, the former to William T. Malone and the

latter to his heirs, for services in the war between Texas and Mexico, and the certificate recites that he fell at the Alamo, the heirs of such William T. Malone are entitled to the land whether he fell at the Alamo or not. And if such heirs show by the proof, to the satisfaction of the jury trying the case, that said recital was erroneous, and that the person to reward whose services the certificate was issued did not fall at the Alamo, but survived the war of Texas independence, and died at his home in Mississippi in the year 1880, and was their father, they are entitled to a verdict.

Where the question is one not of the validity of the grant, but of the identity of plaintiffs' ancestor, through whom they claim, with the original grantee, it becomes then purely a question of fact to be decided by the jury under proper instruction from the court, and the jury's finding will not be disturbed when there is sufficient evidence to support same. Edrington v. Kiger, 4 Texas, 89; Railway v. Garrett, 73 Texas, 266.

*A. H. Culwell,* for defendant in error.—Said warrant was issued by an officer of a former and different government, and it was issued in accordance with acts of the Congress of the Republic clothing him with all necessary power. By article 4050, Paschal's Digest, the Secretary of War was authorized to issue certificates for bounty lands to all who volunteered in said war and were honorably discharged, and by articles 4060 and following he was directed to issue like certificates to heirs of those who fell at the Alamo. By article 4061 it is provided that these certificates shall state for what service it is issued. Hence the conclusion is forced that this bounty warrant was issued under authority of law and by the proper officer. We then make this proposition, that there are three distinct facts stated in this certificate, each entitling the donee to 640 acres of land, or 1920 acres, as stated in the certificate, viz: For volunteering and enlisting in the army, 640 acres (see Paschal's Digest, articles 4035, 4037); for serving in the army from September 26, 1835, to March 6, 1836, he was entitled to 640 acres (see Paschal's Digest, article 4057); and for falling in the Alamo, 640 acres (see Paschal's Digest, article 4064). By article 4076, same volume, it is provided that when the name of one applying for one of these certificates is not contained in the muster roll the Secretary of War could hear proof and issue warrant anyway, if convinced of its true character. By article 4038 this land descends to the heirs of those volunteers who die in the service of Texas. Wherefore, under the proposition that this warrant was issued by the proper officer of a former government, and after this great lapse of time, we urge that it imports verity and can not be impeached. Hatch v. Dunn, 11 Texas, 716; Hanrick v. Jackson, 55 Texas, 27; Johns v. Schultz, 47 Texas, 581; Ruis v. Chambers, 15 Texas, 590; Jenkins v. Chambers, 9 Texas, 168. Again, this warrant was registered and approved by the commissioner of claims, who was directed by law to inquire into the genuineness of same and to register and approve them

if found to be true (Paschal's Digest, articles 1112, 1115, and following), and it is a presumption of law that officers do their duty, and in the absence of fraud, the facts under which they act can not be inquired into. See Styles v. Gray, 10 Texas, 505; Davis v. Bargas, 32 S. W. Rep., 874; Shinn v. Hicks, 4 S. W. Rep., 486; Burkett v. Scarborough, 59 Texas, 495; Bowmer v. Hicks, 22 Texas, 159, and other cases there cited.

It devolved upon the donee to establish the facts recited in this certificate before same could issue, and surely appellee's ancestor could not meet this requirement, as we find him living in 1880. Possibly there were two persons by the same name serving in this war; and in view of the recitals of this warrant on the question of identity I would call your attention to the case of McNeil v. O'Connor, 14 Southwestern Reporter, 1058. See also Smith v. Walton, 18 S. W. Rep., 217.

BROWN, ASSOCIATE JUSTICE.—The land in controversy in this case was located· and surveyed by virtue of a bounty warrant issued by the Secretary of War of the Republic of Texas, July 5, 1838, which is as follows:

### "REPUBLIC OF TEXAS.

"Know all men to whom these presents shall come: That Wm. T. Malone having served faithfully and honorably for the term of five months from the twenty-sixth day of September, 1835, to the sixth day of March, 1836, and having fallen in the Alamo, is entitled to nineteen hundred and twenty acres bounty land, for which this is his certificate. And said Wm. T. Malone or legal heirs is entitled to hold said land or to sell, alienate, convey and donate the same, and to exercise all rights of ownership over it.

"In testimony whereof, I have hereunto set my hand at Houston this fifth day of July, 1838.

"GEO. W. HOCKLEY,
"Secretary of War."

The patent was issued upon the land on the 20th day of August, 1872, to the "heirs of W. T. Malone, deceased." There is no evidence to show when the location of the certificate was made nor is there any proof as to the person to whom the certificate was delivered or upon whose application it was issued.

The index of the muster rolls deposited in the General Land Office, so far as they were produced on the trial, did not show that there was any such name as Wm. T. Malone among those who fell at the Alamo, and one witness who knew the ancestor of the plaintiffs testified that he knew him as a soldier in the army of the Republic of Texas, and did not know of any other Wm. T. Malone in the said army. Plaintiffs proved that they were the children and heirs of Wm. T. Malone, who died in the year 1880 in Lee County, Mississippi, and that their ancestor was a soldier in the army of the Republic of Texas, and the muster rolls

of Captain Parrott's artillery company show that there was in said company at Bexar on the 23d day of November, 1835, a man by the name of Wm. T. Malone.

The defendant in the court below did not connect the chain of title under which he held possession with the State.

The trial court submitted the case under instructions to the jury presenting the issue whether the plaintiffs were the heirs of the grantee in the certificate, and the jury found in favor of the plaintiffs, upon which judgment was rendered and appeal taken to the Court of Civil Appeals, where the judgment was reversed and judgment rendered for the defendant.

In the trial of this case in the District Court, the sole issue submitted to the jury was, did the plaintiffs show that they were the heirs of the Wm. T. Malone named in the bounty warrant, by virtue of which the land in controversy was located and patented? The judgment of the Court of Civil Appeals rests upon the proposition that the testimony introduced by the plaintiffs is not sufficient to support the finding in favor of plaintiffs upon that issue. Plaintiffs' ancestor bore the name of Wm. T. Malone, the same as that in the bounty warrant. He came to Texas in 1835 and was in the army of the Republic for an uncertain time, and died in 1880 in Mississippi, whence he came. There is no proof of the length of time he served or the point at which he served, except that the name "Wm. T. Malone" appears on the muster rolls of Captain Parrott's company, which was at Bexar on the 23d day of November, 1835. There is no proof that plaintiffs' ancestor was the Wm. T. Malone whose name appears upon that muster roll or that he belonged to that company.

The bounty warrant by which the location was made was issued on the 5th day of July, 1838, by the Secretary of War of the Republic of Texas, reciting that Wm. T. Malone had served in the army of the Republic from the 6th day of September, 1835, to the 6th day of March, 1836, and having fallen at the Alamo, his heirs were entitled to a bounty warrant for 1920 acres of land. The law was in much confusion upon this subject, and the courts of this State have found it necessary to indulge the presumption that the officer who issued such warrants followed the construction placed upon the laws at that time. Rogers v. Kennard, 54 Texas, 30. We do not deem it necessary to discuss the different provisions to determine for what service all of these lands were granted, for it is manifest from the recitals in the bounty warrant that 640 acres of land were granted because of the fact that the soldier fell in the massacre of the Alamo on the 6th day of March, 1836. That recital was an official act performed in obedience to the requirements of the statute and expresses a conclusion arrived at upon investigation and must be taken as true. Pasch. Dig., art. 4061; McPhail v. Burris, 42 Texas, 142. In the case cited, Judge Moore, for the court, said: "It certainly can not be be seriously denied that it was the duty of the boards of land commissioners to determine under what

law applicants were entitled to the certificates issued to them. In doing this, evidently the board determined the class to which the certificate belonged. In the absence of controverting testimony, the action of the board must be regarded as sufficient to establish the fact to be as determined by it, if, indeed, the class to which the certificate belonged, which necessarily entered into the decision of the applicant's right to the certificate can collaterally be brought in question." Upon the authority of that case, we are satisfied to rest the proposition that the recital in the bounty warrant established a strong prima facie case that the W. T. Malone mentioned fell in the massacre of the Alamo, and in order for the plaintiffs to recover, it was necessary for them to make such proof as would overcome that recital and establish the fact that their ancestor was entitled to the bounty warrant and that it was actually issued to him or in his right.

There is no evidence from which the conclusion can be reached that this bounty warrant was issued upon the application of the ancestor of the plaintiffs made either in his person or by any person representing him, or that his claim to that warrant was under investigation by the Secretary of War at the time this bounty warrant was issued. The recitals in the warrant prove that the W. T. Malone mentioned died on the 6th of March, 1836. The proof shows that the ancestor of the plaintiffs was living at the time the warrant was issued, that he did not fall at the Alamo, but died after the land was patented. The recitals in the warrant show that the services of the Malone named began in September, 1835, and terminated on the day of the massacre at the Alamo. The proof does not show when the services of plaintiffs' ancestor began, but does show that it did not terminate until after the battle of San Jacinto, on the 21st day of April, 1836. The bounty warrant in this case establishes that the W. T. Malone named in it was entitled to 1920 acres of land as a bounty for his services and for the fact of his death at the Alamo, but the plaintiffs' proof failed to show to what amount of bounty land their ancestor was entitled, except for enlistment in the army of the Republic. The discrepancies between the recitals of the warrant and the facts connected with plaintiff's ancestor are so great that it devolves upon them to prove such facts as would justify the jury in believing that this bounty warrant was in fact issued upon the investigation of the right and claim of plaintiffs' ancestor ·and was in fact intended for him and issued for his benefit, The only evidence in the record that tends in the remotest degree to discredit the recitals of the warrant is that the rolls of those who fell at the Alamo did not contain the name of Wm. T. Malone. We know as a matter of history that in 1855 the office of the Adjutant-General of the State of Texas, in which the muster rolls of the men who fell at the Alamo were placed, was destroyed by fire, and the absence of the name of W. T. Malone from the rolls as subsequently made up and deposited in the Land Office, does not prove that he did not fall at that time and place. The investigation upon which the bounty warrant

was issued was made in 1838, when the archives were in the possession of the Secretary of War and when the testimony of living witnesses could be had to prove the facts recited, and it would require strong and convincing evidence to overturn the deliberate conclusion arrived at by the Secretary of War, which may have been based on evidence now lost. The plaintiffs wholly fail to show themselves to be the heirs of the person to whom the bounty warrant was granted. We regard this as the ground upon which the Court of Civil Appeals entered its judgment, and upon this ground we sustain that judgment. We do not find it necessary to determine whether the recitals in the bounty warrant are absolutely conclusive, because no testimony is presented which contradicts the recitals.

There is no error in the judgment of the Court of Civil Appeals, and it is therefore affirmed.

*Affirmed.*