BALENTINE et al. v. DODGE et al.†

(Court of Civil Appeals of Texas. Amarillo. Oct. 14, 1911. Rehearing Denied Nov. 4, 1911.)

1. PUBLIC LANDS (§ 172*)—HEADRIGHT CERTIFICATE—RECITAL.

Recital in a headright certificate issued in 1838 by a board of land commissioners to one as administrator of B. that B. was killed at the Alamo establishes a strong prima facie case of such fact, requiring strong and convincing evidence to overturn the conclusion of the commissioners, which may have been based on evidence now lost.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 172.*]

2. PUBLIC LANDS (§ 172*)—HEADRIGHT CERTIFICATE—IDENTITY—EVIDENCE.

Evidence in trespass to try title to land patented to the heirs of B. by virtue of a headright certificate issued to one as administrator of B. recited to have been killed at the Alamo *held* insufficient to connect with the B. mentioned in the certificate, plaintiffs, who sue as his heirs.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 172.*]

Appeal from District Court, Ochiltree County; F. P. Greever, Judge.

Action by J. J. Balentine and others against George M. Dodge and others. Judgment for defendants. Plaintiffs appeal. Affirmed.

S. J. Allen, Hoover & Taylor, and Allen & Allen, for appellants. E. C. Gray and J. W. Crudgington, for appellees.

HALL, J. Appellants, as the heirs of J. J. Balentine, brought this suit in trespass to try title to recover of appellees, 1,476 acres of land, patented to the heirs of J. J. Balentine by virtue of a certificate issued February 5, 1838, to P. M. Mercer, as administrator of the estate of said Balentine by the board of land commissioners of Washington county. The defendants filed formal answers and the cause proceeded to trial before a jury. After the introduction of the testimony, the jury, under peremptory instructions from the court, returned a verdict in favor of the appellees for the whole amount of the land. Appellants bring the case before us for review upon two assignments of error, as follows:

First. "The court erred in instructing the jury to return a verdict against the plaintiffs and in favor of the defendants for the land in controversy herein because the plaintiffs' evidence shows that the land in controversy was granted to the heirs of J. J. Balentine, and the plaintiffs' evidence shows that they are the heirs at law of the said J. J. Balentine, to whom the right to the land in controversy was granted by the state of Texas on account of the said Balentine becoming a citizen of Texas prior to May, 1835, and the defendants did not show any right or title whatever to the land in controversy herein."

Second. "The court erred in holding that the recital in the headright certificate issued to the heirs of J. J. Balentine to the effect that said Balentine was killed at the Alamo was conclusive of the rights of the plaintiffs to recover the land herein, because the right of the plaintiffs to said land certificate was not based upon the fact that they were the heirs of a soldier who fell at the Alamo, but is based upon the fact that they are the heirs of J. J. Balentine, and that said Balentine became a citizen of Texas prior to May, 1835, and for that reason he was entitled to a headright certificate."

[1] The second assignment challenges the ruling of the trial court in holding that the recital in the certificate to the effect that J. J. Balentine was killed in the Alamo was conclusive against the right of appellants to recover, and insists that their right to the certificate was not based upon the fact that they were the heirs of a victim of the Alamo, but is based upon the fact that they are the heirs of one who became a citizen of Texas prior to May, 1835. And they urge the proposition that the finding by the board of land commissioners that J. J. Balentine was killed in the Alamo is a finding of a collateral fact not necessary to be ascertained by the said board in order to authorize it to issue the certificate. It does not appear from the record before us that the trial court held the recital to be conclusive, and we are unable to say whether the peremptory instruction was upon that ground or because the court thought the evidence failed to identify the J. J. Balentine named in the certificate as the ancestor of appellants.

The court of Civil Appeals of the Second District in the case of Dick v. Malone, 24 Tex. Civ. App. 97, 58 S. W. 168, decided the identical question raised by appellants in this assignment, and held the recital to be conclusive. The opinion of a majority of the court on this issue is in part as follows: "One of the appellant's assignments of error complains that 'the verdict and judgment is not supported by the evidence, in this: That the evidence shows that this land was patented in 1872 to the heirs of William T. Malone, deceased; and the evidence also shows that the William T. Malone, under whom these plaintiffs claim, did not die until 1880, while the evidence further shows that the William T. Malone who was entitled to this land fell at the Alamo in 1836, it also showing that plaintiffs' ancestor did not take part in the battle of the Alamo.' This assignment the court sustains, because the evidence is undisputed that the father of appellees, in whose right as heirs they claim title to this land, did not fall at the Alamo, but died in the state of Mississippi in 1880. The certificate or bounty warrant issued in this case establishes on its face that a William T. Malone fell at the Alamo on March 6, 1836 (Smith v. Walton, 82 Tex. 547, 18 S. W. 217), and for that reason, in part, the bounty of the republic of Texas was extended to his heirs. These facts should be accepted as fully proven in this case. It matters not, then, that his name is not found among the list of those who fell in that cruel massacre, nor that one witness who served in that war never knew or heard of any other person by that name who served in that war except plaintiffs' ancestor. It was for the Secretary of War to determine the facts upon which the right to this bounty depended, and, having issued the warrant, it is conclusive in this case that it was issued to the heirs of the William T. Malone, who served in the Texas army from September 26, 1835, until March 6, 1836, and fell in that memorable battle, and not the father of the appellees, who was alive at that time and continued in the flesh until 1880."

On writ of error to the Supreme Court, in the same case, Brown, Justice, said, "We do not find it necessary to determine whether the recitals in the bounty warrant are absolutely conclusive, because no testimony is presented which contradicts the recital"; but held that such a recital established a strong prima facie case that the person mentioned in the warrant fell in the massacre of the Alamo, and that the burden was upon the

heirs of W. T. Malone to show that the person named in the warrant did not fall at the Alamo, that their ancestor was entitled to the warrant, and that it was issued to him or in his right. And in discussing the weight of such recital said: "We know as a matter of history that in 1855 the office of the adjutant general of the state of Texas, in which the muster rolls of men who fell at the Alamo were placed, was destroyed by fire, and the absence of the name of W. T. Malone from the rolls as subsequently made up and deposited in the land office does not prove that he did not fall at that time and place. The investigation upon which the bounty warrant was issued was made in 1838, when the archives were in possession of the Secretary of War, and when the testimony of living witnesses could be had to prove the facts recited; and it would require strong and convincing evidence to overturn the deliberate conclusion arrived at by the Secretary of War, which may have been based on evidence now lost." Malone, v. Dick, 94 Tex. 419, 61 S. W. 112.

[2] So the remaining question for us to decide is, Have the appellants in this case presented such "strong and convincing evidence" as "to overturn the deliberate conclusion arrived at by the land commissioners" which may have been based on evidence now lost? The evidence is uncontradicted in this case that J. J. Balentine, the ancestor of appellants, was not killed at the Alamo, but appeared in Mississippi in 1850, after an absence of 20 years; that he lived there 4 years with his son and other relatives, then went to California, and died there in a mining camp 15 days after his arrival. J. T. Balentine, the grandson of J. J. Balentine one of the appellants, testified as follows: "My grandfather, J. J. Balentine, had two children, one a boy and the other a girl. The boy was my father. The girl was drowned when she was about five years old. I have often heard my grandfather's sister and my father talk about my grandfather, J. J. Balentine. From the history that I got from my father and my grandfather's sister, my grandfather's wife died when my father was 10 days old. My grandfather never married again. My father was about four years old when my grandfather left him in North Carolina and went to Texas. He never saw my grandfather any more until about 1849 or 1850. My father did not mention any particular places where my grandfather was in Texas, only that he was around a great deal in Southern Texas, around Buffalo bayou, Brazos river, and Corpus Christi Bay. My aunt told me about my grandfather being in Texas, and about the Mexicans and Indians. She did not mention any towns, just told me about some rivers and bayous, but that is about all I can recall. My aunt just told me that my grandfather came to Texas in 1830,

and was in Texas for a number of years, and was over a great deal of Texas, and about him being among the Mexicans and Indians. And they did not see him for 20 years, and he came back to Mississippi, where they were living at the time, and that was the time he had told them what he had seen in Texas. I stated in that deposition that my grandfather was in Texas and Louisiana, but I do not remember of them saying how long he was in either place. They never told me of any particular place in Louisiana, except about him being on the bayous. I recall the Tensas bayou, Lewis bayou, and the Ouachita river, but I do not remember of any particular place." These facts are not as strong and full as those proven in the case of Dick v. Malone. Moreover, they do not show that the ancestor of appellants was a "resident citizen" of Texas, within the meaning of the law, nor as that term is commonly understood, nor do they show that this J. J. Balentine was in Texas at such time and under such circumstances as to entitle him to a land certificate, even if he had been living and applied for it in person. Sayles' Early Laws, art. 398, § 12.

In this connection it is well to note this difference between the case of Dick v. Malone and the case at bar. In the former the recital that Malone was killed at the Alamo stands uncorroborated, while in this case it appears that one P. M. Mercer, before making application for the certificate in question, had been appointed administrator of the estate of J. J. Balentine, in whose right the certificate was issued; thus strongly corroborating by judicial ascertainment, and decree of a probate court, the recital in the certificate of the fact of the death of the party under whom appellees claim.

We conclude from this that the court below peremptorily instructed the jury upon the theory that appellants had not connected themselves with the J. J. Balentine mentioned in the certificate, and in this we think he was correct. There being no error in the record, the judgment of the lower court is affirmed.