RANDOLPH FIELDS ET AL. v. C. C. BURNETT ET AL.

Decided March 5, 1908.

1.—Grant—Patent to Heirs—Administration—Title in Estate.

G., a widow with children, having emigrated to Texas, died in 1832, having taken no steps to obtain title to land. Under the Constitution of the Republic (General Provisions, sec. 10), saving to orphan children of parents entitled to land under the colonization laws of Mexico the rights of which their parents were possessed at their death, a certificate was issued by the Board of Land Commissioners, in 1838, showing that G. was entitled to a league and labor of land. It was located in the same year, and a patent thereon issued to the heirs of G. in 1842. Held, that the land secured by the located certificate was asset of G.'s estate, and as such subject to administration; the certificate was not a mere donation to the heirs; grantees holding under a valid conveyance of the land by the administrator of G., in 1840, took title as against the heirs of G. to whom the land was subsequently patented.

2.—Same—Cases Reviewed, etc.

Fishback v. Young, 19 Texas, 515; Pendleton v. Shaw, 18 Texas Civ. App., 439; Soye v. Maverick, 18 Texas, 101; Lyne v. Sanford, 82 Texas, 61, and other cases, followed. Leonard v. Rives, 33 S. W., 291; McKinney v. Brown's Heirs, 51 Texas, 94; Grant v. Wallis, 60 Texas, 352; Todd v. Masterson, 61 Texas, 618; Eastland's Ex'r v. Lester, 15 Texas, 98; Causici v. La Coste, 20 Texas, 269, distinguished.

3.—Administrator's Sale—Lost Records—Presumption.

Evidence considered under which an administrator's deed was held to convey title to land though order of sale and of confirmation were not shown, the records of the court having been burned, and presumptions in its favor from lapse of time and long delay in adverse claim being indulged.

Appeal from the District Court of Harris County. Tried below before Hon. C. E. Ashe.

*Slayton & Berry* and *Rowe & Rose* for appellants.—When a grant is not made in discharge of some obligation of the government which the law would recognize, it would not, in a legal sense, be anything more than an act of sovereign grace and bounty on the party of the sovereignty; and it matters not how meritorious the consideration that constitutes the moving cause for making the grant, if it is not such as the law would recognize, the grant is but a gift or donation; and so, as in the case at bar, where the undisputed evidence shows that the ancestor immigrated to Texas prior to 1830 as a colonist, a widow and the head of a family, and, as such, was entitled under the Mexican law then in force to one league and one labor of land, and died in 1832 without taking steps to avail herself of her legal rights, all such rights as she may have had by virtue of such immigration and the laws of Mexico then in force, were abrogated by her failure to act in the premises and by change of laws and of sovereignty subsequent to her death, and neither her administrator, nor her assigns, nor her heirs, under the sovereignty of Texas had rights which the laws would recognize, unless or until a law or laws were enacted giving new, or renewing old rights; and the adoption of Art. 220, Sec. 10, Subd. E, of the Constitution of 1836 of Texas did not renew old rights, but gave new rights to her orphan children living in Texas on March 16, 1836, and measured such children's rights by the measure of the ancestor's inchoate right.

Leonard v. Rives, 33 S. W., 291; 1 Sayles' Early Laws, p. 206, Art. 220, Sec. 10, Subd. "E;" Ibid. p. 73, Art. 48, Instructions to Commissioners; Causici v. LaCoste, 20 Texas, 269; McKinney et al. v. Brown's Heirs, 51 Texas, 94; Eastland v. Lester, 15 Texas, 98. As to right by inheritance see: Middleton v. McGrew, 23 How., 48 (16 L. Ed. 403); Blythe v. Easterling, 20 Texas, 565; Ferguson v. Johnson, 11 Texas Civ. App., 413. As assets of the estate, see: Schouler on Exrs. and Admrs., 198-212; Phelps v. McDonald, 99 U. S., 298, (25 L. Ed., 473); Eastland v. Lester, 15 Texas, 98; Todd v. Masterson, 61 Texas, 625. As to sovereignty of soil and right to dispose of it, see: Chambers v. Fisk, 22 Texas, 504; U. S. v. Sandoval et al., 167 U. S., 279 (42 L. Ed., 170); Republic v. Thorn, 3 Texas, 499; Jones v. Borden, 5 Texas, 410; Kemper v. Victoria, 3 Texas, 135. As to descendible character of ancestor's right as property, see: Walters v. Jewett, 28 Texas, 200. As to conclusiveness of certificate, see: McPhail v. Burris, 42 Texas, 145. As to principle involved, see: 9 Cyc., 333. On question of obligation to grant and gratuity, see: Causici v. LaCoste, 20 Texas, 269; Turner v. Rogers, 38 Texas, 583; Kennedy's Heirs v. The State, 11 Texas, 109. As to burden of proof, see: Duncan v. Rawls, 16 Texas, 478.

In order for the grant of lands in controversy to have been legally subject to administration as a part of the estate of Nancy Gowen it was necessary that she should have had during her lifetime, something more than a mere inchoate right—she must have complied with the laws then in force, and had such a right as the law would recognize and enforce and she will not be presumed to have complied with such laws, but to the contrary there must be proof that she did so comply and the burden is upon those claiming under the administrator to show such compliance, and mere residence on land is not evidence of compliance with the law. Paschal v. Dangerfield, 37 Texas, 273; Paschal v. Perez, 7 Texas, 348; Grant v. The Heirs of Wallis, 60 Texas, 351; I Sayles' Early Laws, Art. 48, p. 73, Instructions to Commissioners; Authorities under First Proposition, supra; Turner v. Rogers, 38 Texas, 582; Blum v. Looney, 69 Texas, 1; Ralston v. Skerrett, 82 Texas, 491. As to power of Government over imperfect title, see: 1 Sayles Real Est. Laws, Art. 10, p. 21; McMullen v. Hodge, 5 Texas, 34; Jones v. Borden, 5 Texas, 410; Jones v. McMasters, 20 Howard, 8 (Vol. 15, L. Ed., 805); Airhart v. Massieu, 98 U. S., 491; (25 L. Ed., 213).

When the plain provisions of a statute are violated, or not complied with, as under the law of February 5, 1840, the law under which the sale by Fields as administrator to Townsend must be construed, which, while it did not in terms require confirmation, did require, a return of the sale by the executor or administrator, within one month after the sale, and it is necessary for the deed to show this fact and that the court had acted thereon, and in absence of such approval, or the acts requiring approval, all presumptions ordinarily indulged must fail and said sale be held as void. Hartley's Dig., arts. 1016, 1018; Neill v. Cody, 26 Texas, 286; Brown v. Christi, 27 Texas, 77; Littlefield v. Tinsley, 26 Texas, 355; Harris v. Brower, 3 Texas Civ. App., 649; Peters v. Caton, 6 Texas, 553; Graham v. Hawkins, 38 Texas, 628.

*Thos. B. Greenwood, Joe H. Eagle* and *L. B. Moody,* for appellee.— The land in controversy was a part of the estate of Nancy Gowen, and subject to administration, because acquired by virtue of a head-right certificate, issued under Section 10 of the Constitution of the Republic of Texas, in discharge of an obligation of the former government to Nancy Gowen, and in recognition and confirmation of rights accruing to her on account of her emigration to Texas. Section 10, Constitution of the Republic of Texas, 1 Gammell's Laws of Texas, 1080; Soye v. Maverick, 18 Texas, 101; Fishback v. Young, 19 Texas, 515; Babb v. Carroll, 21 Texas, 768; Smith v. Walton, 82 Texas, 552; Pendleton v. Shaw, 18 Texas Civ. App., 439; Soye v. McCallister, 18 Texas, 80; Hill v. Moore, 85 Texas, 343; Lyne v. Sanford, 82 Texas, 65; Marks v. Hill, 46 Texas, 345; Grigsby v. May, 84 Texas, 249; Allen v. Clark, 21 Texas, 404; State v. Zanco's Heirs, 18 Texas Civ. App., 127; Todd v. Masterson, 61 Texas, 622; Rogers v. Kennard, 54 Texas, 34, 35.

Under the statute in force at the date of the sale by the administrator of the estate of Nancy Gowen to Barkley Towsend, no confirmation of the sale by the probate court was required. The recitals of the administrator's two deeds are abundant to show his authority to convey the title of the estate; and, besides, after some sixty years, the power of the administrator must be presumed, against collateral attack, when the failure to produce the record evidence required by law is satisfactorily accounted for, as that, as in this case, they have been destroyed by fire; and the presumption will be indulged of due report of sale and due confirmation, in so far as may be essential to authorize the deeds of the administrator. However, in no event could the failure of the administrator to perform some act subsequent to the sale affect the title of the purchaser. Williams v. Cessna, 43 Texas Civ. App., 315; White v. Jones, 67 Texas, 640, 641; Dutton v. Vaughn, 38 Texas Civ. App., 372; Dancy v. Stricklinge, 15 Texas, 560; Bartlett v. Cooke, 15 Texas, 471; Miles v. Dana, 13 Texas Civ. App., 240; Lynch v. Pittman, 31 Texas Civ. App., 553; Baker v. Coe, 20 Texas, 430; Perry v. Blakey, 5 Texas Civ. App., 331; Arnold v. Hodge, 20 Texas Civ. App., 211.

The administration upon the estate of Nancy Gowen was in accordance with the law, and must be sustained against collateral attack. Nelson v. Bridge, 98 Texas, 525; Moody v. Looscan, 44 S. W., 623, 624; Burdett v. Silsbee, 15 Texas, 616; Williams v. Howard, 10 Texas Civ. App., 527; Galbraith v. Howard, 11 Texas Civ. App., 230; Shirley v. Warfield, 12 Texas Civ. App., 449; Moseley v. Vander Stucken, 26 Texas Civ. App., 290; Evans v. Martin, 6 Texas Civ. App., 331; Pendleton v. Shaw, 18 Texas Civ. App., 439; Dancy v. Stricklinge, 15 Texas, 560; Bartlett v. Cooke, 15 Texas, 471; Poor v. Boyce, 12 Texas, 450; Ferguson v. Templeton, 32 S. W., 149; Templeton v. Ferguson, 89 Texas, 47; Kleinecke v. Woodward, 42 Texas, 311.

WILLSON, Chief Justice.—The suit was to try the title to the Nancy Gowen survey of one league and one labor of land in Liberty and Hardin Counties. It was commenced by a petition filed in the District Court of Liberty County, September 16, 1903. Some of plain-

tiffs claimed title as the heirs, and others claimed as grantees of the heirs of Nancy Gowen, deceased. The defendant Arch McDonald claimed title to the northwest quarter of the survey as a purchaser from Nancy Gowen's heirs. As to the remainder of the survey, said McDonald and the other defendants and certain parties who had intervened in the suit claimed title under deeds executed by Isaiah Fields as administrator of the estate of Nancy Gowen, deceased. By agreement of the parties the venue of the suit was changed from Liberty to Harris County, where, by a further agreement of the parties, judgment was rendered for plaintiffs for 600-1151 of the northwest quarter of the survey and for the defendant Arch McDonald for the remaining 551-1151 of said quarter; and where on a trial had February 28, 1907, judgment was rendered in favor of certain of the defendants and interveners for the remainder of the land. From the judgment so rendered appellants, plaintiffs below, prosecute this appeal.

In their carefully and ably prepared brief appellants insist that the certificate by virtue of which the land in controversy was surveyed and patented was not a part of the estate of Nancy Gowen, deceased, but as a donation to was the property of her heirs; and that therefore the conveyances made by her administrator could not pass title to the land to the parties under whom appellees claim.

It appears from the record that Nancy Gowen, then a widow, with her youngest child in 1827 emigrated to Texas, from Louisiana, and in 1832, while residing on the land in controversy, died. It does not appear that while residing in Texas she took any steps towards complying with the laws then in force, under the provisions of which she might have been entitled to a grant of land.

Section 10 of the general provisions of the Constitution of the Republic of Texas, declared that "all persons (Africans, the descendants of Africans and Indians excepted) who were residing in Texas on the day of the Declaration of Independence, shall be considered citizens of the Republic, and entitled to all the privileges of such. All citizens now living in Texas, who have not received their portion of land in like manner as colonists, shall be entitled to their land in the following proportion and manner: Every head of a family shall be entitled to one league and labor of land. . . . Orphan children whose parents were entitled to land under the colonization laws of Mexico, and who now reside in the Republic, shall be entitled to all the rights of which their parents were possessed at the time of their death."

February 1, 1838, the Board of Land Commissions for Liberty County issued a certificate, numbered 94, reciting: "Whereas, proof has been made to us that Nancy Gowen emigrated to Texas in the year 1827, had a family, died in the year 1832, and has heirs now living; therefore, this is to certify that the said Nancy Gowen was entitled under the laws to one league and labor of land." By virtue of this certificate the land in controversy was surveyed and fieldnotes thereof returned to the General Land Office in 1838, and on January 28, 1842, a patent thereto was issued to the heirs of Nancy Gowen.

For the purposes of this suit, the recitals in the .certificate must, we think, be regarded as conclusively establishing that Nancy Gowen

during her lifetime, as an emigrant to Texas and as the head of a family, had become entitled to the quantum of land specified therein, and that at the date of the adoption of the Constitution she had heirs residing in the Republic. (Walters v. Jewett, 28 Texas, 192; Babb v. Carroll, 21 Texas, 765; McPhail v. Burris, 42 Texas, 145; Smith v. Walton, 82 Texas, 551.)

We think it is true, as appellants contend it is, that in the absence of a compliance by her with other requirements of the laws then in force, merely by her emigration to and residence in Texas while it was a Mexican state, Nancy Gowen did not acquire a right to the land of which the courts of the Republic could take cognizance, or which the political department of the Republic was under any legal obligation to respect. As a logical sequence it would follow that her heirs by descent from her took no estate in the land, or the right to it, which the courts or the political department of the Republic were under any legal obligation to respect. But while, because it was an imperfect, inchoate right, the Republic when it succeeded to the sovereign power, lawfully might have refused to recognize her right or the right of her heirs through her, it did not see proper to do so. Instead, when it declared that "orphan children whose parents were entitled to land under the colonization laws of Mexico, and who now reside in the Republic, shall be entitled to all the rights of which their parents were possessed at the time of their death," it recognized as existing and worthy of enforcement the parents' rights and provided for their enforcement in favor of the orphan child. The rights so bestowed upon the child did not rest upon an obligation of any kind to the child, but upon an obligation to the child's parents. The latter's rights accrued upon their emigration to Texas. (Babb v. Carroll, 21 Texas, 765.) It was the rights so accruing, resting upon the obligation of the former government to such immigrants, and therefore, if not in contract, in the nature of one,—which the Republic by the constitutional provision quoted recognized and meant to save to the child. In effect the Republic assumed the obligation to immigrants which rested on the former government, and in its own way undertook to discharge those obligations. The provision made in the Constitution for such immigrants, in the sense that the Republic was under no legal obligation to make it, was a donation; but in a broader sense it was not a donation. The Republic had become the sovereign authority and had succeeded to the benefits accruing to the former government from the emigration to and continued residence in Texas of the parties for whom and on whose account the provision was made. The rights it recognized had been acquired on the faith of the former government's laws, and in only a narrow sense can it be said that in recognizing and providing for the enforcement of those rights the Republic was making a donation to the immigrants. It was doing more as the successor to the benefits its predecessor expected from the emigration to Texas of citizens of other countries, it was assuming the obligation resting on its predecessor to grant to the immigrants the lands which, to induce them to come, it had promised them. If the question were a new one, the writer therefore would be inclined to the opinion—not concurred in by the other members of the court—that a certificate issued under the provision

referred to of the Constitution of the Republic should not be regarded as intended to be a donation merely, but instead should be regarded as intended to be a grant in performance of an obligation it had assumed; and the consideration for such performance on the part of the Republic proceeding from the parents, that their children should be held to take the property as they would any property derived by them in the right of their parents—that is, charged with their parents' debts and subject to administration for the payment thereof. But as suggested above, the question seems not to be a new one.

In Fishback v. Young, 19 Texas, 515, Cornelius with his wife and children had settled in Texas in 1831. He died in 1832. His widow married Young in 1835. The certificate was issued to Cornelius' heirs. In a partition made of his estate his widow was allotted one-half and his children the other one-half of the certificate. The children afterwards brought suit to annul the partition on the ground, among others, that the certificate having been granted to Cornelius' heirs his widow was not entitled to any portion of it. The court held that if the children were entitled to claim as "orphan children" within the meaning of the Constitution, they could claim only their father's rights; and after stating that the land had it been granted at the time of Cornelius' death would have been community property, of which the widow would have owned one-half, the court adds: "They—the children—have no personal or individual right to the land granted. They can claim only as representatives of the deceased. They represent not only the separate estate of the deceased, but also his community property; and until the latter is divided, they may be considered, and in grants of this character always have been considered, as representing the whole of the community estate. . . . Let the grant be issued as it will, if the issue be to persons representing, in form or in fact, the deceased, it must inure to the benefit of all interested in the estate. It is not questioned but that the Board of Commissioners had lawful authority to issue a grant for the benefit of this estate. Such question can not be regarded as an open one. Grants of this character have always been recognized by the government, and it is too late now to question their validity."

In Pendleton v. Shaw, 18 Texas Civ. App., 439, it appeared that in 1830 or 1833 Pendleton came to Texas from Virginia, where he left his wife and children, who never came to the State; that he married again in Texas and died in 1835, leaving surviving him his Virginia wife and their children and his Texas wife, who shortly after his death left the State; and that on March 14, 1839, a certificate for one league and one labor of land was issued to his heirs. The certificate was treated as assets of his estate, and sold and conveyed by his administrator. It was held that the grant to Pendleton's heirs inured to his estate and became assets subject to administration.

The reasoning of the court in the Fishback case seems to be applicable to the facts of this one; and keeping in view property rights which we must take it for granted have accrued on the faith of a decision made so long ago, we think it must be regarded as conclusive of the question here. While the report of the Pendleton case does not so state, the certificate there in question must have been issued under the

provision quoted of the Constitution of the Republic. Assuming that it was so issued, we are unable to see how it can be distinguished from this case.

The same ruling seems to have been made by the court in Soye v. Maverick, 18 Texas, 101, and in effect, in Lyne v. Sanford, 82 Texas, 61. And as further supporting the proposition that such certificates were assets subject to administration as a part of a decedent's estate, see Marks v. Hill, 46 Texas, 349; Hill v. Kerr, 78 Texas, 218; Rogers v. Kennard, 54 Texas, 35; State v. Zanco's Heirs, 18 Texas Civ. App., 127.

Having reached the conclusion that appellant's contention that the certificate and the land patented by virtue of it was not assets of Nancy Gowen's estate and as such subject to administration, must be overruled, it would be useless to enter into an extended discussion of the authorities relied upon to support it. It is believed no case will be found where it has been held that a certificate issued by a Board of Land Commissioners under the provision in question of the Constitution of the Republic was not assets of the decedent's estate, and as such subject to his debts.

But briefly reviewing the cases relied on by appellants, we may say that in Leonard v. Rives, 33 S. W., 291; McKinney v. Brown's heirs, 51 Texas, 94, and Grant v. Wallis, 60 Texas, 352, the certificates in question had been issued by virtue of special Acts of the Legislature, which in each instance, in connection with the facts in the particular case before it, satisfied the court that it was intended as a donation. In Todd v. Masterson, 61 Texas, 618, the certificate was issued to the heirs of one Baker, who had fallen with Travis at the battle of the Alamo. Baker had performed no service nor any act in contemplation of the issuance of such a certificate. It was held to be a donation to his heirs. In Eastland's Exr. v. Lester, 15 Texas, 98, in conformity to the provisions of an Act for the relief of certain persons formerly prisoners of war in Mexico, Eastland's executor had received from the government a sum of money which a creditor of Eastland sought to have returned in the inventory as a part of Eastland's estate. For the reasons which controlled in the disposition made of Todd v. Masterson, the money was held to be a gratuity to Eastland's heirs and not subject to administration. In Causici v. La Coste, 20 Texas, 269, Castro under a contract with the government had introduced colonists into Texas. The latter, for a consideration, had undertaken to convey to Castro a portion of the land they might receive as colonists under his contract with the government. On account of his failure to comply with its terms Castro's contract was declared by the State to be inoperative and void. Afterwards the Legislature passed an Act conceding to the colonists the land they would have been entitled to had they and Castro complied with their forfeited contracts. It was held that the grant to the colonists was a donation. If the case on principle fairly can be distinguished at all from the one before us it must be on the ground that the government was under no obligation, moral or otherwise, to protect the colonists from the results of a forfeiture due to their own and Castro's failure to comply with their contracts, while in this case there was a strong moral, if no legal, obligation to protect

and enforce rights acquired by Mrs. Gowen on the faith of laws in force in Texas at the time she emigrated to the State, and lost to her, not as the result of any fault on her part but as the result of a revolution whereby another government became the sovereign authority.

By a deed dated November 5, 1840, I. S. Fields as administrator of the estate of Nancy Gowen, deceased, undertook to convey the east one-half of the league and labor of land to Barkley Townsend. This deed was admitted as evidence over appellants' objection on the ground (1) that it did not appear that the probate court had authorized the administrator to make the sale, and (2) that the sale as made did not appear to have been reported to and to have been confirmed by said court.

The deed objected to contained this recital: "Whereas by an order of the Hon. Probate Court for the County of Liberty, empowering Isaiah Fields, administrator of the estate of Nancy Gowen, deceased, to sell and convey land belonging to the estate of the said Nancy Gowen, deceased, for certain purposes in said order and fully to do and perform the things therein specified and set forth," etc.

It was admitted on the trial that the court house in Liberty County, where the administration on Nancy Gowen's estate had been pending, with all the deed and probate records of that county, had been destroyed by fire in 1874.

It seems from a certified statement made by the Comptroller, forming a part of the record, that appellees and their vendors claiming under the administrator's deeds had rendered the land for taxation since 1850. It does not appear that appellants before the institution of this suit had made any effort to enforce their claim to the land. Fields, the administrator, was a son-in-law of Nancy Gowen, having married her daughter. The date of his death is not shown in the record, but it appears that at the date of the trial of appellants' suit he had been dead many years.

On the facts stated we are of the opinion that the deed properly was admitted as evidence, and that it was sufficient to pass to Townsend the title in Nancy Gowen's estate to the east one-half of the league and labor of land. The failure to recite in the deed that the sale as made by the administrator had been reported to and confirmed by the court, even if such confirmation under the laws then existing had been necessary to its validity, would not have affected the validity of the sale. Its validity did not depend upon recitals in the administrator's deed, but upon the existence of facts authorizing it as made. Those facts properly would have been shown by the probate records of Liberty County, and, if those records had been in existence, must have been shown in support of the deed. But without fault on the part of appellees those records had been destroyed; and had every requirement of the law to validate the sale been scrupulously complied with, they had been deprived of the means of showing such compliance. During the thirty-four years following the date of the administrator's sale while those records were in existence, no question as to the validity of the sale appears to have been made, and more than sixty years had elapsed from the date of that sale before appellants' suit attacking it was instituted. Under such circumstances we think it ought to be presumed

in the absence of proof to the contrary, that every requirement of the law necessary to the validity of the sale was complied with. (White v. Jones, 67 Texas, 640; Baker v. Coe, 20 Texas, 435; Veramendi v. Hutchins, 48 Texas, 551; Garner v. Lasker, 71 Texas, 431; Maxson v. Jennings, 19 Texas Civ. App., 700.)

By a deed dated April 1, 1848, Fields as administrator, undertook to convey to Chas. L. Cleveland the southwest quarter of the league. This deed was admitted as evidence over appellants' objection, on grounds similar to those urged to the admissibility of the administrator's deed to Townsend. The deed recited the order of the probate court of Liberty County directing the sale to be made, the administrator's report of the sale as made by him, and the order of the court directing him to make a deed conveying the land to the purchaser. The orders of the court were not as full and specific as properly they might have been, but nevertheless we think furnish sufficient support for the administrator's deed as against the collateral attack made on same by the plaintiffs.

In view of the conclusions reached, that the land was assets of Nancy Gowen's estate and as such subject to administration, and that the administrator's deeds were sufficient to pass to parties under whom defendants and interveners claimed, title to the east half and southwest quarter of the survey, the other objections urged by appellants to the judgment need not be noticed.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.