Lorna ZOBEL et al., Petitioners,

v.

Jose SLIM, Trustee et al., Respondents.

No. B–6974.

Supreme Court of Texas.

Dec. 29, 1978.

Rehearing Denied Feb. 14, 1979.

Werner & Rusk, John C. Werner, Houston, for petitioners.

Dow, Cogburn & Friedman, Edmund L. Cogburn and K. Gregory Erwin, Houston, for respondents.

DENTON, Justice.

This is a trespass to try title suit brought by Fred J. Zobel, his wife, Lorna E. Zobel, and Helen M. Decker (hereinafter referred to as the Zobel plaintiffs) against Jose Slim, Trustee and Erwin Hill, Trustee (hereinafter referred to as the Slim defendants) for five acres of land located in Harris County. The trial court granted the Zobel plaintiffs' motion for instructed verdict and rendered judgment that the Zobel plaintiffs recover title and possession to the five acres described in the judgment. The court of civil appeals reversed and rendered judgment that the Zobel plaintiffs take nothing. 552 S.W.2d 899. We reverse the judgment of the court of civil appeals and remand the cause to the trial court.

The Zobel plaintiffs claim the five acres through a chain of title originating with a

1846 patent from the State of Texas to the heirs of George Childress. The patent covers 1,920 acres. There are three distinct chains of title under the patent. The three chains merge in H. Masterson at the beginning of the twentieth century. Since one of these chains establishes title for the period of time in which all three chains run, it is unnecessary for the Zobel plaintiffs to rely on two of the chains of title. These two chains will not be discussed in this opinion.

In 1846 Governor Henderson patented 1920 acres to the "heirs of George W. Childress." The patent is recorded in the Harris County Deed Records and the land is described therein by metes and bounds with reference to adjoining surveys, trees, posts and the Houston and Montgomery Road. In the same year D. W. Harris, purporting to act as the administrator of George Childress' estate, purported to sell the 1,920-acres for $200. A chain of title through 1894 follows the administrator's deed. Sometime before 1874 the purported heirs of George Childress brought suit to cancel the administrator's deed. In 1894 the District Court of Harris County rendered judgment cancelling the administrator's deed and awarding the heirs title to 1,668 acres of the 1,920-acre tract. The 1894 judgment, discussed more fully below, recites that a 100-acre tract claimed by a Mr. Knigge and a 152-acre tract claimed by a Mr. Schroeder were not included in the judgment because Knigge and Schroeder had established title to the two tracts by limitation. An examination of the descriptions in the Knigge and Schroeder deeds reveals that the five acres in controversy in this suit are not within the land conveyed to Knigge and Schroeder.

In the Childress heirs' lawsuit, the court appointed an attorney to represent those defendants who were not present at trial. The 1894 judgment assessed as costs of the suit the $200 fee for the court-appointed attorney against the heirs. The sheriff executed on the land awarded by the judgment. The subsequent sheriff's deed to J. R. Masterson and J. S. Stewart, also discussed more fully below, recites that the grantees were the highest bidders at the execution to pay the $200 attorney's fee, and conveyed to the grantees the entire 1,920 acres for $200, with reference to the 1894 judgment for a full description of the property.

In 1897 J. S. Stewart conveyed his full interest in the 1,920 acres by general warranty deed to H. Masterson. In the same year, J. R. Masterson conveyed his full interest in the 1,920 acres by general warranty deed to H. Masterson, excepting the 100-acre Knigge tract and the 152-acre Schroeder tract.

The chain of title from 1897 to the present includes a 1910 deed from R. T. Adkins and W. A. Roberts to C. W. Hahl and Company, a partnership, and a 1914 deed from C. W. Hahl to C. W. Hahl Co., a corporation. The 1910 deed excepts five specific tracts of land included in the Childress Survey and the 1914 deed excepts one specific tract of land and all of the tracts of land conveyed to C. W. Hahl by Adkins and Roberts that had been previously conveyed by Hahl. Although the 1910 and 1914 deeds specify the volume and pages where the deeds to the six specifically excepted tracts are recorded in the county records, the records of these six conveyances were not allowed into evidence.

In 1921 C. W. Hahl Company conveyed the following property to Bertha Zobel Sheeran:

[T]he South five acres out of Block # 2 out of the third Subdivision of the George W. Childress Survey, as per plat of same recorded in Vol. 327, Page 325 of the deed records of Harris County.

Fred J. Zobel and Helen M. Decker claim the described five acres as the children and only heirs at law of Bertha Zobel Sheeran, who died intestate in the 1950's.

■ The first issue involved in this case is whether, as a matter of law, the Zobel plaintiffs established the heirs of George Childress as their predecessors in title. The court of civil appeals held, as a matter of law, that the Zobel plaintiffs failed to establish such heirship. We conclude that heirship was established as a matter of law.

The Zobel plaintiffs introduced into evidence the 1894 judgment entered in the lawsuit between the purported heirs of George Childress and the persons claiming title under the administrator's deed. The judgment states that the suit was prosecuted "in the names of the heirs at law of George Childress . . .," and recites the names of the plaintiffs who were awarded title to the disputed property. The Slim defendants presented no evidence rebutting these recitations, but they claim that the recitations are conclusory, self-serving, made after descent had been cast and therefore inadmissible hearsay under *Byers v. Wallace,* 87 Tex. 503, 28 S.W. 1056 (1894); *Walker v. Barrow,* 464 S.W.2d 480 (Tex.Civ.App.—Houston 1971, writ ref'd n. r. e.); *Slattery v. Adams,* 279 S.W.2d 445 (Tex.Civ.App.—Beaumont 1954), *aff'd* 156 Tex. 433, 295 S.W.2d 859 (1955); *Smith v. Lynn,* 152 S.W.2d 838 (Tex.Civ.App.—San Antonio 1941, no writ).

■ Under a well-recognized exception to the hearsay rule, the recitals in an ancient document are admissible as evidence of the facts recited, provided that the instrument is over thirty years old, comes from proper custody, and is not suspicious in appearance. *Magee v. Paul,* 110 Tex. 470, 221 S.W. 254 (1920); *Bendy v. W. T. Carter & Bros.,* 269 S.W. 1037 (Tex.Com. App.1925, jdgmt adopted); *Moore v. Horn,* 359 S.W.2d 947 (Tex.Civ.App.—Beaumont 1962, ref'd n. r. e.); C. McCormick & R. Ray, Texas Practice: Evidence §§ 1372–1375 (1956). The 1894 judgment meets these requirements and qualifies as an ancient document admissible as evidence of heirship. The cases relied on by Slim defendants are distinguishable in that they do not involve recitals of heirship in a judgment entered in a lawsuit in which the court had to determine heirship in order to grant relief.

■ As a practical matter, there is usually no other way to prove the heirship of a person who died in 1836 than by the recitations in ancient documents. The 1894 judgment is particularly reliable because it had to determine heirship in a contested proceeding. We therefore hold that, in the absence of rebutting evidence, recitations of heirship in an ancient judgment entered in a lawsuit that had to determine heirship in order to grant relief establish heirship as a matter of law. *Cf. Sydnor v. Texas Savings & Real Estate Inv. Ass'n,* 42 Tex.Civ. App. 138, 94 S.W. 451 (1906, writ ref'd); *Ardoin v. Cobb,* 136 S.W. 271 (Tex.Civ.App. —1911, no writ).

■ As a part of their chain of title, the Zobel plaintiffs rely on an 1895 sheriff's deed to J. S. Stewart and J. R. Masterson. The second issue in this case is whether the 1895 sheriff's deed which recites that $200 had been paid for the property, is void because the sheriff's return recites that the consideration for the property was not paid. The court of civil appeals did not address this issue. We conclude that the sheriff's deed is valid.

The December 4, 1895 sheriff's deed to J. S. Stewart and J. R. Masterson recites that, pursuant to a writ of execution issued by the district court in favor of the court-appointed attorney for costs due in the Childress heirs' suit, the sheriff levied on the property described in the 1894 judgment on November 3, 1895, and sold the entire property at a public sale to Stewart and J. R. Masterson for $200 on December 3, 1895. The sheriff's deed expressly acknowledges the sheriff's receipt of the $200. The sheriff signed the deed and the county clerk filed and recorded it in 1897. However, the sheriff's return entered in the execution docket of the district court recites that the property patented to the Childress heirs was levied upon on December 1, 1895, and sold to Stewart and Masterson on January 7, 1896 for $200. The sheriff's return states that the $200 was never paid. A deputy sheriff signed the return. Stewart and Masterson filed a motion entitled "Motion to Correct Sheriff's Return on Execution and for Sheriff to Deliver Deed to Purchasers." The motion states that Stewart and Masterson had paid the $200 directly to a court-appointed attorney, but the motion was never ruled on by the court.

The Slim defendants contend that the sheriff's deed is void because the sheriff's return recites that the consideration was not paid. However, if the recitals in a sheriff's deed and the recitals in his return conflict, then the recitals in the deed control. *Holmes v. Buckner,* 67 Tex. 107, 2 S.W. 452 (1886); *Tanner v. Grisham,* 289 S.W. 146 (Tex.Civ.App.—Eastland 1926), *rev'd on other grounds,* 295 S.W. 590 (Tex. Com.App.1927, holding approved); *Moore v. Miller,* 155 S.W. 573 (Tex.Civ.App.—San Antonio 1913, writ ref'd). The rationale for this rule is that a sheriff is presumed to have done his duty. *White v. Jones,* 67 Tex. 638, 4 S.W. 161 (1887); *Harris v. Mayfield,* 260 S.W. 835 (Tex.Com.App.1924, holding approved); *Fields v. Burnett,* 49 Tex.Civ. App. 446, 108 S.W. 1048 (1908, writ ref'd).

Under the statute applicable in the late 1890's, the sheriff was under a duty to resell the property as soon as possible if Stewart and Masterson had failed to pay the consideration. 1939 Tex.Gen.Laws, § 1, at 201. There is no evidence in the record before us that the 1895 sheriff's sale was set aside or that the sheriff resold the property. The most reasonable inference to be drawn from these facts is that the consideration was paid.

We cannot conclude that after 85 years, a sheriff's deed is void merely because of a sheriff's return entered in an execution docket. We hold that if an ancient sheriff's deed and the sheriff's return are in conflict as to whether the consideration for the property was paid, then payment is established as a matter of law, in the absence of evidence that the sheriff's sale has been set aside. Therefore, the 1895 sheriff's deed establishes a valid link in the Zobel plaintiffs' chain of title.

The third issue involved in this case is whether the Zobel plaintiffs proved, as a matter of law, that the exceptions to two of the deeds in their chain of title do not include the five acres in controversy. The court of civil appeals held that "the evidence failed to show as a matter of law the property awarded to plaintiffs was not included in any of the exceptions from the tracts described in the documents relied upon . . . ." 552 S.W.2d 904. We agree that the trial court erred in rendering an instructed verdict.

The 1910 deed from R. T. Atkins and W. A. Roberts to C. W. Hahl and Company excepts five tracts totalling 334.08 acres and recites that after these tracts are excepted, 625.92 acres are conveyed to C. W. Hahl and Company. The deed specifies the volume and page number where the deeds to the five tracts are recorded in the Harris County deed records. Similarly, the 1914 deed from C. W. Hahl to C. W. Hahl Co. excepts one tract of land and specifies where the deed to the tract is recorded in the Harris County deed records.

At trial, Reno G. Hartfiel, title attorney and expert on deed descriptions for Statewide Title Insurance Co., testified as an expert witness for the Zobel plaintiffs. Hartfiel stated that he works with surveys "everyday", that his title company had "this particular property surveyed," and that based on the survey and his knowledge of deed descriptions, the five acres "is contained in all the instruments" introduced. However, the survey was not admitted into evidence, nor did any witness explain the basis of the survey. Hartfiel also testified that he had seen the deeds to the five exceptions to the 1910 conveyances and that the five acres are not included in these exceptions.

After both parties had closed their cases, the Zobel plaintiffs requested to reopen their case and introduce six deeds in order to show that the five acres are not included in the exceptions. The trial court refused to reopen and enter the documents and proceeded to grant the Zobel plaintiffs' motion for instructed verdict.

The Slim defendants correctly point out that the established rule in Texas is that the plaintiff in a trespass to try title suit has the burden to show that the land he is claiming is not included in the exceptions to the conveyances that form his chain of title. *Mills v. Pitts,* 121 Tex. 196, 48 S.W.2d 941 (1932); *Waggoner v. Dodson,* 96 Tex.

415, 421, 73 S.W. 517 (1903); *Best Investment Co. v. Hernandez*, 479 S.W.2d 759 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.); *Seddon v. Harrison*, 367 S.W.2d 888 (Tex.Civ.App.—Houston 1963, writ ref'd n. r. e.). We agree that the Zobel plaintiffs did not prove, as a matter of law, that the exceptions to the 1910 and 1914 deeds do not include the five acres in controversy. It cannot be determined, as a matter of law, whether the excepted tracts include the five acres without examining the descriptions of the excepted tracts. Because the trial court erred in not allowing the Zobel plaintiffs to introduce the deeds to the excepted tracts and because Mr. Hartfiel's testimony does constitute some evidence that the excepted deeds do not include the five acres in controversy, we will remand the cause to the trial court for a new trial. Tex.Rules Civ. Proc. 503.

█ The fourth issue in this case is whether the Zobel plaintiffs proved, as a matter of law, the location of the five acres on the ground. The court of civil appeals held that "the evidence failed to show as a matter of law the five acres in dispute can be located on the ground by the description set out in the pleadings and judgment." 552 S.W.2d at 903. We agree.

The Zobel plaintiffs' petition and the trial court's judgment contain the following description of the five acres in controversy:

> Being the Bertha Zobel Sheeran 5.00 acre tract of land out of Tract Two, Hahl's Suburban Farms, Third Subdivision, G. W. Childress Survey, Abstract 217, as recorded in Volume 327, Page 325, Deed Records of Harris County, Texas, said 5.00 acres being that same tract of land described in deed to said Bertha Zobel Sheeran dated October 4, 1921 and recorded in Volume 487, Page 564, Harris County Deed Records; said 5.00 acres being more particularly described as follows:
> BEGINNING at an iron rod found marking the Southeast corner of said Tract Two and the Southwest corner of Tract One and being in the Northeast right of way line of Grant Road; THENCE N 70°

10′ 15″ W 531.51 feet along said right of way line to iron rod found marking the Southwest corner of said Tract Two; THENCE North along the West line of said Tract Two and at 266.7 feet passing an iron rod and continuing on a total distance of 345.45 feet to iron rod set for corner; THENCE East 500 feet to iron rod set for corner in the East line of said Tract Two and the West line of said Tract One; THENCE South and at 78.75 feet passing an iron rod and continuing on a total distance of 525.75 feet to PLACE OF BEGINNING and containing 5.00 acres of land.

In support of the above description, the Zobel plaintiffs introduced into evidence several deeds and plats, including the 1921 Sheeran deed referred to in the above description, Abstract 217 referred to in the above description, the 1910 deed to C. W. Hahl and a tax plat. None of the evidence offered by the Zobel plaintiffs furnishes a basis for the metes and bounds description recited in the second paragraph of the above description.

The 1921 Sheeran deed specifies that the land conveyed is the *south* five acres of Block 2 and refers to Abstract 217 at specified page in a specified volume of the Harris County deed records for a further description of the five acres.

Abstract 217 is a 1914 subdivision plat and map of Hahl's Suburban Farms Third Subdivision. All of the blocks in the subdivision, including Block 2 are shown in the subdivision plat. The plat is not scaled and does not show any distance or direction calls. The plat does indicate how many acres are contained in each of the fifty-five blocks in the subdivision. Block 2 consists of 10.4 acres and the plat shows an unnamed and unmarked "graded county road to Houston" along the lower border of Block 2.

At trial, Mr. Hartfiel, the title expert called by the Zobel plaintiffs, testified as follows regarding the accuracy of the 1914 subdivision plat:

> This plat is used by—every tract of land sold in that subdivision has used this plat

as a recording reference and properties can be located on the ground, apparently, by a surveyor who goes out . . . and surveys it.

The Zobel plaintiffs also introduced three deeds that show that the 1914 subdivision plat is relied on by other property owners, including the Slim defendants, in Hahl's Suburban Farms Third Subdivision. The descriptions in the deeds indicate that several of the blocks, including Block 2 are located by reference to the 1914 subdivision plat.

The 1914 subdivision plat recites that the subdivision is the same land conveyed to C. W. Hahl by R. T. Adkins and W. A. Roberts in a 1910 deed, and refers to this deed at a specified page in a specified volume of the Harris County deed records for a full description. The 1910 deed describes a total of 906 acres as follows:

> [A]ll that certain tract of . . . land . . . situated in Harris County, Texas being a part of a survey of 1920 acres, originally granted to the Heirs of Geo. W. Childress, by Patent No. 47 Vol. 3 . . described by metes and bounds, as follows: —Beginning at one of the northwest corners of the said Geo. W. Childress Survey, the same being the northeast corner of the Habermacher survey, on the south line of the Lewis Survey. Thence south 6686 feet to corner on the south line of said Childress Survey: thence east with said south line . . . 9,848 feet to corner: thence North . . . 3547 feet to corner: thence west . . . 7180 feet to Harrington's southwest corner: thence north . . . 3139 feet to one of the northeast corners of the Childress Survey on Harrington's west line: thence west . . . 2622 feet to the place of beginning.

The deed then excepts five tracts [1] from the above descriptions and recites that after these tracts are excepted, 625.92 acres are conveyed to C. W. Hahl and Company.

The 1972–1973 tax plat introduced by the Zobel plaintiffs is an entry in the Assessor's Block Book for Harris County. The plat shows "Hahl's Surburban 3rd" including Block 2 divided into a southern portion of 5.4 acres and a northern portion of 5 acres. The plat shows the graded county road to Houston as Grant Road and shows two numbered farm to market roads. The plat shows one farm to market road intersecting Grant Road in the Childress Survey six blocks west of Block 2 and the other farm to market road running across three of the blocks north of Block 2. The plat contains direction calls, distance calls for the boundaries of all the blocks including Block 2, and distance calls for the three roads crossing or bordering the blocks in the subdivision. The tax plat is not referred to in any of the deeds that form the Zobel plaintiffs' chain of title. There is nothing in the record to indicate the basis of the information contained in the tax plat.

■ The 1972–1973 tax plat introduced into evidence by the Zobel plaintiffs is not admissible under the facts revealed by the trial record. None of the deeds relied on by the Zobel plaintiffs refer to the tax plat. The trial court record in this case does not show how the plat was made, nor does the record contain any evidence linking the plat to the descriptions in the Zobel plaintiffs' chain of title. In these circumstances, the tax plats cannot be relied upon for location of the five acres on the ground. *Weatherly v. Jackson*, 123 Tex. 213, 71 S.W.2d 259 (1934); *Finberg v. Gilbert*, 104 Tex. 539, 141 S.W. 82 (1911); *Waldrop v. Manning*, 507 S.W.2d 626 (Tex.Civ.App.—Texarkana 1973), *writ ref'd n. r. e. per curiam*, 514 S.W.2d 899 (Tex.1974).

■ Mr. Hartfiel testified as follows regarding the location of the five acres in controversy.

> I have seen lot 2 that is in question. I have seen the land. I have seen the survey that the surveyor did.

---

1. This deed along with the five exceptions are discussed under the heading "The Exceptions in the Chain of Title," *supra.*

As a title abstractor, Mr. Hartfiel was not qualified to testify as to the location of the five acres on the ground. Even if he were a qualified surveyor, his testimony that he had seen Block 2 would not be competent evidence. The survey relied upon by Hartfiel was not introduced into evidence; the surveyor was not called as a witness; and the basis for the survey and Hartfiel's opinion was not explained. In these circumstances, we must regard this part of Hartfiel's testimony as hearsay and inadmissible. *See City of Mission v. Popplewell*, 156 Tex. 269, 294 S.W.2d 712 (1956); *Moseley v. Fikes*, 126 S.W.2d 589 (Tex.Civ.App.—Fort Worth), *aff'd* 136 Tex. 386, 151 S.W.2d 202 (1939); *City of Port Lavaca v. Fisher*, 355 S.W.2d 785 (Tex.Civ.App.—San Antonio 1962, no writ hist); *Southern Pine Lumber Co. v. Whiteman*, 104 S.W.2d 635 (Tex.Civ. App.—Eastland 1937, writ dism'd).

 In a trespass to try title suit, the general test for determining the sufficiency of a description of land is whether the tract can be identified with reasonable certainty. *Smith v. Griffin*, 131 Tex. 509, 116 S.W.2d 1064 (1938); *Etheridge v. Dallas*, 246 S.W.2d 692 (Tex.Civ.App.—Waco 1952, aff'd 253 S.W.2d 640); *see Williams v. Ellison*, 493 S.W.2d 734 (Tex.1973); *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.1972). More specifically, the judgment in a trespass to try title case must so identify the land that an officer charged with the duty of executing a writ of possession can locate the property without exercising judicial functions. *Permian Oil Co. v. Smith*, 129 Tex. 413, 73 S.W.2d 490 (1934); *Gilbreath v. Yarbrough*, 472 S.W.2d 185 (Tex.Civ.App.—Tyler 1971, writ ref'd n. r. e.).

Based on the record before us, we cannot conclude as a matter of law, that the Zobel plaintiffs located the property on the ground. Although the Zobel plaintiffs' petition and the trial court judgment describes the property as "the south five acres" of a particular block of a particular subdivision, the 1914 subdivision plat referred to in the petition and judgment does not contain any directional calls, course calls or monuments. The description in the

1910 deed referred to in the 1914 subdivision plat does contain directional calls, course calls and monuments, but the tract described therein does not exactly coincide with the subdivision plat because the five excepted tracts were included in the 1910 description. Finally, none of the deeds or plats introduced by the Zobel plaintiffs afford a basis for the specific metes and bounds description recited in the Zobel plaintiffs' petition and the trial court judgment. Upon a new trial, this description must be tied to the five acres described in the Zobel chain of title if the Zobels are to recover judgment for the tract described in their petition. If any fact issues arise as to location of the five acres on the ground, they should be submitted to the jury on special issues. *See Finberg v. Gilbert*, 104 Tex. 539, 141 S.W. 82 (1911); *Withers v. Republic National Bank of Dallas*, 248 S.W.2d 271 (Tex.Civ.App.—Beaumont 1951, writ ref'd n. r. e.); Tex.Rules Civ.Proc. 503.

The judgment of the court of civil appeals is reversed and the cause is remanded to the trial court for a new trial.